**KEGANS v. WHITE et al.**

No. 1907.

Court of Civil Appeals of Texas. Eastland.

June 16, 1939.

Rehearing Denied Sept. 15, 1939.

Scarborough & Ely, of Abilene, for appellant.

R. Temple Dickson and H. R. Bondies, both of Sweetwater, for appellee.

LESLIE, Chief Justice.

Lessie Lee White, joined pro forma by her husband J. C. White, J. T. Kegans, W. P. Kegans and G. A. Kegans, Jr., instituted this suit in the County Court against Tennessee Rebecca Kegans, a feme sole, to recover the "reasonable value of the occupancy and use" of their one half interest in 150 acres of land, alleged to amount to about $300 "including the occupancy and use of the improvements thereon." This was for the use of the premises for the year 1936. The defendant filed a plea in abatement and otherwise denied liability. The trial resulted in a verdict and judgment in favor of the plaintiffs for $225 with six per cent interest per annum thereon from January 1, 1937. The defendant appeals.

Appellant is the former wife of G. A. Kegans, Sr., who is the father of the appellees. In a divorce suit between G. A. Kegans, Sr., and appellant, the Nolan County District Court, on October 17, 1935, by way of a property settlement, awarded appellant the right to use and occupy the land in controversy for a period of five years.

The appellant filed a plea in abatement on the ground that the petition was in effect a partition suit, or a suit involving title and possession of land, and that the County Court had no jurisdiction to determine the issues raised. The plea in abatement was overruled. The petition was also excepted to on the ground that the trial court had no jurisdiction to try the cause. The appellant in answer, by cross-action, sought without effect to make her former husband, G. A. Kegans, Sr., a party to the suit. Other questions are presented but they are not controlling, and only that portion of the pleadings and testimony will be referred to as are essential to an understanding of this opinion.

The first proposition is based upon the action of the trial court in overruling defendant's plea in abatement. The proposition is to the effect that the appellees' right of recovery was predicated upon a dispute as to the title and possession of real estate, rendering it necessary for the court to adjudicate and determine the question of title in order for the appellees to recover, and that, therefore, the county court had no jurisdiction to try the cause.

The first material allegation in plaintiffs' petition is "that they (plaintiffs) now own and did at all times hereinafter mentioned own an undivided one half interest in the following described land and premises situated in Nolan County, Texas, viz.", the 150 acres in controversy.

The allegations in this pleading and in a subsequent one set forth in great detail the basis of plaintiffs' claim to right, title and possession of the one half interest in the 150 acres of land: That G. A. Kegans and Eula Kegans, parents of the plaintiffs, were married in 1903, and their mother died intestate in July, 1917; that at her death the community estate of the parents had, in connection with other accumulated properties, about $6,000 in the bank at Trent, Texas, in the name of their father G. A. Kegans, Sr., who, about two years (September, 1919) after the death of the mother, bought said 150 acres of land therewith, taking a deed in his own name, but did not record the same as he desired to speculate on the land, and did not want the interest of the minors (plaintiffs herein) to appear, thereby rendering it necessary to obtain court orders authorizing the sale of the interest owned by them in the land, etc.

That the 150 acres of land was purchased from M. L. Adrian for about $5,700 cash; and the Adrian deed to G. A. Kegans, Sr. was kept in the bank at Trent, Texas. That during such time, Tennessee Rebecca Kegans, the appellant, was the wife of H. F. Burton; that G. A. Kegans, Sr., after explaining to the Burtons the interest of the Kegans children in the land, sold it to the Burtons and had M. L. Adrian execute a deed to H. F. Burton, December 16, 1919, for a consideration of about $1,800 cash, delivered to Kegans, and ten promissory vendor's lien notes for $570 each, payable to the order of G. A. Kegans, Sr. That thereupon said G. A. Kegans, Sr., destroyed the deed Adrian had made direct

to him, and which had been withheld from records.

That April 18, 1922, H. F. Burton, joined by his wife (the present appellant, Tennessee Rebecca Kegans), conveyed said land to J. F. Mashburn for a consideration of $400 cash and the assumption of the ten $570 notes executed by Burton to Kegans. There is no allegation or evidence that Mashburn was not a bona fide purchaser of the land.

That on October 8, 1924, Mashburn and wife conveyed the land to R. A. Venable for $1,500 cash and the execution to said J. F. Mashburn his 14 promissory vendor's lien notes, 13 for $500 each, and one for $250. There is no allegation or evidence that Venable was other than a bona fide purchaser. "That in consideration of the cancellation of the 10 notes for $570 each given by H. F. Burton in part payment for said land, the said fourteen notes of the said R. A. Venable were transferred and delivered by J. F. Mashburn to G. A. Kegans and that the vendor's lien was retained in the deed from J. F. Mashburn and wife to R. A. Venable to secure the payment of said fourteen notes. That the said 14 notes were a continuation and extension of the obligation and lien on said land originally given and fixed in the sale of the same by G. A. Kegans to H. F. Burton."

That said H. F. Burton, at a date unknown to plaintiffs, obtained a divorce from his wife, Tennessee Rebecca, who, on January 23, 1928, married said G. A. Kegans, Sr., father of the plaintiffs. That thereafter, on December 29, 1930, in consideration of the cancellation by G. A. Kegans, Sr., of the 14 Venable notes, Venable transferred the 150 acres of land back to G. A. Kegans, Sr. "And plaintiffs show that in the manner and under the circumstances related the funds belonging to the community estate of their father G. A. Kegans and their mother Eula Kegans, deceased, were invested after the death of their said mother in said 150 acres. That they became one half owners of said 150 acres when such investment was made, and that such one half ownership continued and extended in and to the vendor's lien notes hereinbefore described and to the lien retained on said 150 acres securing payment of said notes so that when said 150 acres was finally transferred back to the said G. A. Kegans in consideration of cancellation of the R. A. Venable's vendor's lien notes they became one half owners of said land and premises."

In the divorce suit between G. A. Kegans, Sr., and the appellant herein, Tennessee Rebecca Kegans, in addition to the decree of divorce, property rights were adjudged and it was therein decreed that the 150 acres was "the separate property of the plaintiff" (G. A. Kegans, Sr.). The plaintiffs in the instant suit (the children of G. A. Kegans and his first wife) were not parties to the divorce suit.

Thereafter on May 22, 1937, in a suit between Lessie Lee Kegans (now Lessie Lee White) and her brothers and sisters against G. A. Kegans, Sr., et al., an undivided one half interest in said 150 acres was awarded said children as against the father. The appellant was not a party to that suit. The instant suit was filed July 30, 1937.

On the trial, the appellees for the purpose of showing "as between the plaintiffs in this suit and G. A. Kegans, Sr. that they own an undivided one half interest in the property" introduced the judgment of date May 2, 1937, as well as the deed from Adrian to Burton, from Burton to Mashburn, from Mashburn to Venable, and Venable to Kegans, Sr. Such testimony was limited to the purpose indicated, but objection was also urged thereto on the ground that appellees were seeking to establish title to the property, and the County Court had no jurisdiction to determine the issue of title.

Upon the state of facts thus detailed, the appellees contend that their suit is merely a demand for "the reasonable value of the occupancy and use of said premises for said year 1936 * * * including the occupancy and use of the improvements thereon. They show that their share and interest in said rentals is the sum of $300." That the recovery sought is within the jurisdiction of the County Court and that the title to the 150 acres of land is not involved, except in a collateral or incidental way which would not deprive the trial court of jurisdiction to adjudicate the issues presented. If the title is involved in no other way than that suggested, clearly the trial court had jurisdiction to hear and determine the case as established by the authorities relied upon by appellees. Kalteyer v. Wipff, Tex.Civ. App., 65 S.W. 207; Putty v. Putty, Tex. Civ.App., 6 S.W.2d 136; Robinson v. Clymer, Tex.Civ.App., 170 S.W. 107; Mel-

vin v. Chancy, 8 Tex.Civ.App. 252, 28 S. W. 241; Southwestern Bell Co. v. Burris, Tex.Civ.App., 68 S.W.2d 542, 543. Appellees insist the suit is not one in trespass to try title, and that any testimony, oral or otherwise, tending to show ownership or right of possession and control of said land was admissible and sufficient. Campbell v. Peacock, Tex.Civ.App., 176 S.W. 774, 777; O'Farrell v. O'Farrell, 56 Tex. Civ.App. 51, 119 S.W. 899, 903.

■ If the appellees correctly interpret the facts and nature of the suit, the above authorities would require that judgment of the court below be affirmed. On the other hand, the appellant's contention is that the suit involves title and ownership of the land within the meaning of subdivision 4 of Art. 1906, R.S.1925, and sec. 8, Art. 5, Constitution of Texas, Vernon's Ann.St. These provisions confer original jurisdiction upon the district court in "suits for the trial of title to land and for the enforcement of liens thereon." Appellant further points out that Art. 1951, R.S.1925 (in accordance with Art. 5, sec. 16, Constitution of Texas, Vernon's Ann.St.), provides, among other things, that County Courts "shall not have jurisdiction of any suit * * * for * * * recovery of lands, nor suits for the enforcement of liens upon land * * *." Under such provisions and the authorities construing them, it is quite certain that if a suit is primarily a contest of the title to land and the adjudication of that contention is necessary in order to settle the controversy, the district court necessarily has jurisdiction.

The rules of law applicable under each of the above states of fact are well understood, but the question presented by this appeal and raised by the assignment is not so easily answered as that. The dividing line between the classes of cases, cognizable solely in the respective courts, is not always so apparent. The instant case, both from the standpoint of pleadings and testimony, has challenged most careful consideration. We have set out somewhat at length the appellees' pleadings. We have done so because they substantially reflect the evidence offered on the trial. Taking the case as a whole and as thus presented, we are of the opinion that it comes within the exclusive jurisdiction of the district court.

The first issue submitted to the jury inquired: "Do you find from a preponder-

ance of the evidence that G. A. Kegans, Sr. originally purchased the land in question from M. L. Adrian with funds belonging to the community estate of himself and his deceased wife Eula Kegans? Answer yes or no, as you find.

"By the term 'community estate' as used in the foregoing issue, is meant, such property of any kind, if any, as the evidence shows was acquired by G. A. Kegans, Sr. and his deceased wife, Eula Kegans, during their marriage relation."

The jury answered the issue in the affirmative, and we think the issue itself goes to the heart of the lawsuit and bears directly upon the question of ownership and title of the appellees in said land, as well as their right of possession thereto. It would have been wholly unnecessary for the appellees in the instant case to have gone to such length in alleging their right and title to the land, unless it had been necessary to establish such right by proof and this necessarily involved the trial of title to the land.

It is unnecessary for us to point out in this opinion or attempt to appraise the rights of the appellees in the funds and real estate that from time to time may have taken one form or another, and thus become subject to their claims, or subject to be impressed with a trust in their favor had they elected at the time to so assert their rights. At times, it seems to us, they were in position to take advantage of and enforce their rights as in the case of a constructive trust which equity raised in their favor and at other times and subsequent thereto, it seems, that the rights of innocent purchaser for value arose as an obstacle to the enforcement of any such claims. Apparently the title to the 150 acres of land, after various transfers, returned to G. A. Kegans, Sr., at a time when he and defendant Tennessee Rebecca Kegans were husband and wife. From the evidence at this trial, he seemed favorably inclined at all times to recognize the rights therein of the plaintiffs (Kegans children) and as between him and them a decree of date May 22, 1937, in a suit brought for that purpose, adjudicates them to be the owners of an undivided one half interest in the 150 acres of land. The appellant was not a party to that suit, and while the divorce decree (October 17, 1935) found the 150 acres to be the separate property of G. A. Kegans, Sr., and awarded it to the appellant for five years, nevertheless, as point-

ed out, the plaintiffs, the Kegans children, were not parties to that suit. As noted, the instant one was filed July 30, 1937.

In the situation thus presented we are constrained to hold that before the appellees may recover the sum prayed for, or any part thereof, they must first establish their right and title to the land, and this can only be done by a suit in the district court where such rights, as against the appellant Tennessee Rebecca Kegans, may under proper pleadings and testimony be adjudicated.

In general, the principles and rules of law employed in the disposition of the following cases have application and controlling effect in the instant one. Farmers' Nat. Bank v. Daggett, Tex.Com.App., 2 S.W.2d 834; Stewart v. Rockdale State Bank, 124 Tex. 431, 79 S.W.2d 116; Coughran v. Nunez, Tex.Com.App., 127 S.W.2d 885; Hinojosa v. Corona, 254 S. W. 1116; Henslee v. Boyd, 48 Tex.Civ. App. 494, 107 S.W. 128; Dauenhauer v. Devine, 51 Tex. 480, 487, 32 Am.Rep. 627. See also Lundquist v. Iverson, 333 Ill. 523, 165 N.E. 135, 138.

The opinion in the Stewart-Rockdale case, supra [79 S.W.2d 119], holds that: "An issue to correct a deed cannot be heard in the county court, nor the issue whether a tract of land is community' property or the separate property of one of the spouses." Citing Farmers Nat. Bank v. Daggett, Tex. Com.App., 2 S.W.2d 835.

Further, although G. A. Kegans, Sr., invested said community funds in the 150 acres of land, these appellees (children of himself and first wife) did not gain or acquire any title to that land. It simply followed, as result of such conversion and the investment in the land, they had an equitable right by proper proceeding to have their interest in the land recognized and set apart by decree of the district court. They did not so elect at the time and the subsequent transfers of the land took place, namely, (1) Adrian to G. A. Kegans, Sr. (deed destroyed); (2) Adrian to Burton, (3) Burton to Mashburn, (4) Mashburn to Venable, and (5) Venable back to G. A. Kegans, Sr. Evidently Mashburn and Venable acquired the right and title as bona fide purchasers for value, and as such transmitted that character of title. When it returned to G. A. Kegans, Sr., the appellees did not hold any title to the land although circumstances doubtless placed them in a position to again establish and enforce the equitable right raised and preserve for them under the principles of a constructive trust. They did not then elect to pursue such remedy and before they finally did so (May 22, 1937) as against their father the divorce decree was entered (October 17, 1935) adjudicating the 150 acres to be the separate property of said G. A. Kegans, Sr., and awarding the appellant, Tennessee Rebecca Kegans, the use and exclusive possession of the land for five years. As stated, the children were not parties to that suit and neither did G. A. Kegans, Sr., appeal therefrom, but permitted the judgment to become final against him. The appellant, as admitted by the appellees, then took actual and exclusive possession and control of the 150 acres, and has continued to hold this in virtue of said decree and settlement of property rights between her and G. A. Kegans, Sr. She has never attorned to these appellees and denies that she owes them anything by way of rents, but bases her claims on a different source.

The appellees doubtless recognized that they did not own any title to the land as against their father after the chain of conveyances (some though bona fide purchasers) returned it to him, and that probably accounts for the suit against their father in which they obtained a judgment, May 22, 1937, declaring their undivided one half interest in said land under allegations and testimony establishing their equitable rights thereto. This decree, no doubt, bound G. A. Kegans, Sr., but it was not binding upon appellant since she was not a party to that suit. Let us suppose that while the title was standing in the name of G. A. Kegans, Sr., as it was at the date of the divorce decree, and he had in good faith and for a valuable consideration, paid in advance, leased the land to a third party for a period of five years, would it be contended that such lessee—when not made a party to the suit—would be affected by the judgment therein, by which these appellees established as against their father an undivided one half interest in the 150 acres of land? We think not. Further, would not the appellant—to whose advantage the divorce decree and property settlement became final—be as much in privity with the G. A. Kegans, Sr., title, as a third party lessee in the supposed case?

It seems to us her rights would be equivalent and equally certain.

In going into the district court to establish their interest in the land as against G. A. Kegans, Sr., the appellees pursued the proper course, but to make the judgment in that case of any effect as to appellant, they should have made her a party defendant. Not having done so, appellant's rights will have to be determined and precluded, if at all, in a suit of the same nature.

It is pretty clear, we think, that title is not involved in a merely incidental or collateral way, but is actually involved as the basis, as well as measure of right of any recovery.

The allegations of the plaintiffs' pleadings, in effect, raise the question of title and right of possession. In one or two respects which could be reached by special exception, the pleadings do not quite conform to the usual allegations in a suit in trespass to try title, but the prayer for general relief would doubtless be sufficiently specific and comprehensive, and, as noted, any minor lack in conformity to regular allegations in such suits, could be reached by special exception, if deemed material.

It is our conclusion that the trial court was without jurisdiction to try the case. The judgment is reversed and the cause is dismissed without prejudice. It is so ordered.