**James B. NITSCHKE et al., Appellants,**

v.

**D. A. DOGGETT, Appellee.**

**No. 11954.**

Court of Civil Appeals of Texas, Austin.

Dec. 6, 1972.

Rehearing Denied Jan. 17, 1973.

Coleman Gay, Austin, for appellants.

Douglass D. Hearne, Stayton, Maloney, Black, Hearne & Babb, Austin, for appellee.

SHANNON, Justice.

The question is whether a lease for the balance of the life of appellee, as lessee, created an estate for years or a tenancy at will. We hold that the lease established a tenancy at will terminable at any time by either the lessor or the lessee.

Appellants, James B. Nitschke and his sister, Mary Alice Nitschke Smith, appeal from the judgment of the county court at law of Travis County in favor of Appellee, D. A. Doggett, in the sum of $9,000.00. We will reverse that judgment, and here render judgment that appellee take nothing and that appellants recover that sum.

This appeal stems from a condemnation proceeding filed in 1967 by the Board of Regents of the University of Texas System to acquire a lot owned by appellants, who are the children of Mayme Lucile Nitschke and Louis E. Nitschke. At the time of condemnation appellee was operating a dry cleaning shop on the lot under an oral lease for the balance of his life obtained from Mayme Lucile Nitschke.

The Regents deposited the award of the Commissioners and took possession. By agreement the sum in controversy, representing the value of appellee's leasehold interest determined on the basis of appellee's life expectancy of twenty-three years, was retained by the clerk of the court, and the balance of the award was withdrawn by appellants. The claim to that sum was severed from the condemnation proceeding and tried separately before the court.

The facts pertaining to appellee's lease for the balance of his life are not complicated. Appellants' father built the shop on the lot in 1934, and appellee, either as a partner or employee of his brother, or as owner, was associated with the dry cleaning business there until the lot was condemned.

After the death of Mr. Nitschke in 1940, Mrs. Nitschke and appellants owned the lot until 1959 when appellants acquired her interest. After that time, Mrs. Nitschke continued to treat with appellee concerning the leasing of the lot and the payment of rents.

Before the oral lease appellee held the lot under a series of written leases. Concerning the origin of the oral lease appellee testified that in 1962 or 1963, after he had delivered a written lease form to her so that she might obtain the necessary signatures which she failed to do, Mrs. Nitschke told him on three occasions that he did not need a written lease, and that he could have the property for the balance of his life for a rental of $85.00 monthly. Appellee did not promise Mrs. Nitschke that he would remain on the lot for the balance of his life, or for any other period.

Appellee emphasizes his testimony that he agreed that he would pay $85.00 a month so long as he remained. In addition, he stresses his statement that up until the time of the taking, he had intended to remain a tenant under the oral lease for the rest of his life.

Although alive at the time of trial, Mrs. Nitschke did not testify for she was *non compos mentis*.

Appellants bring four points of error.[1] Under the first point they argue that the lease failed for want of consideration because it lacked mutuality since appellee did not promise to retain the lot for any specific period of time. Their argument is, in effect, that as appellee was not obligated to remain a tenant for any certain duration, the lease created only a tenancy at will terminable by either the lessor or the lessee at any time. Appellee replies that there was consideration in that he made improvements on the lot in reliance upon Mrs. Nitschke's offer and that, in addition, he paid the monthly rent until the time of

1.    "First Point of Error
The error of the court in holding that the alleged lease contract was valid since lessee was not obligated to lease the property for a single day and hence there was no consideration for appellants' alleged promise.
        "Second Point of Error
The error of the court in holding that a verbal lease for the balance of appellee's life (23 years) was valid as against the Statute of Frauds.
        "Third Point of Error

The error of the court in holding that there was any testimony that Mrs. Mayme Lucile Nitschke purported to act as appellants' agent in making the alleged verbal lease with appellee for the remaining 23 years of his life.
        "Fourth Point of Error
The error of the court in holding—if such holding was made—that appellee had made valuable and permanent improvements upon the leased premises and hence that the Statute of Frauds was inapplicable."

taking.[2] Moreover, appellee maintains that the duration of the lease was for a time certain, his lifetime.

■ In the outset appellee attacks appellants' first point of error for the reason, he says, that it is not supported by their trial pleadings. Appellee contends that the point. of error complains of a "failure of consideration" and, accordingly, must be affirmatively pleaded pursuant to Rule 94, Texas Rules of Civil Procedure, and that appellants filed only a general denial. This argument is without merit. It is "lack of consideration", or "want of consideration", about which appellants complain. They claim that appellee has failed to meet the burden of showing a necessary element of the lease upon which he relies. "Want of consideration" in the case of an agreement not in writing, may be raised by a general denial. See Rules 92 and 93, Tex.R. of Civ.P.

The question to be decided is whether the oral lease created an estate for years or a tenancy at will. If he had an estate for years, appellee was entitled to the value of that estate. If, however, appellee were a tenant at will, he held the lot at the pleasure of the lessor and was not entitled to recover.

■ A lease for years must have a definite and certain time at which it begins and ends. 3 Thompson on Real Property, Section 1088, p. 309 (1959 Replacement). See also, Restatement of the Law of Property, Section 19, Comment b (1936). This was the rule at common law,[3] and, apparently, is still the law of this state. Lea v. Hernandez, 10 Tex. 137 (1853); Hill v.

Hunter, 157 S.W. 247 (Tex.Civ.App.1913 err. ref.); Holcombe v. Lorino, 124 Tex. 446, 79 S.W.2d 307 (1935). In those leases in which the duration of the term is uncertain, only a tenancy at will is created. Hill v. Hunter, *supra.*

Appellee claims that the lease under consideration is distinguishable from those in Hill v. Hunter and like cases, for the reason that the term of the lease was measured by his lifetime, and the inevitability of his death rendered the lease certain. This contention was apparently made and rejected as early as the fifteenth century; " . . . as if one makes a lease or so many yeares as he shall live, this is voide *in praesenti* for the uncertainty." Sir Edward Coke, Commentary Upon Littleton, p. 45b (13 Ed. 1789). See also 1 Tiffany on Landlord and Tenant, p. 61 (1910).

■ That we shall die, we know; only the hour of death's arrival is unknown. But, an event certain to occur, *but uncertain as to the time of its occurrence,* as the death of appellee, may not be used to mark the termination of a lease. See Stanmeyer v. Davis, 321 Ill.App. 227, 53 N.E.2d 22 (1944), National Bellas Hess Inc. v. Kalis, 191 F.2d 739 (8th Cir. 1951).

Emphasis upon the property aspect of the law of landlord and tenant has been roundly criticized in recent years.[4] One writer has observed that, "The task of modern courts has been to divorce the law of leases from its medieval setting of real property law, and adapt it to present day conditions and necessities by means of contract principles, which were only emerging when the law of landlord and tenant first

---

2. Appellants' arguments, and appellee's rejoinder, couched largely in terms of contract illustrate the dual nature of the law of landlord and tenant which concept Thompson rather inelegantly describes as " . . . a hermaphrodite, a combination of property and contract." 3 Thompson on Real Property Section 1110, p. 377 (1959 Replacement).

3. "For regularly in every lease for yeares the terme must have a certaine beginning and a certaine end . . . .", Sir Edward Coke, Commentary Upon Littleton, p. 45 (13th Ed. 1789). See also, 1 Tiffany, Real Property, p. 117 (1920), II Platt, Law of Leases, p. 71 (1847), II Preston, Conveyancing, p. 158 (1825).

4. See 35 California L.Rev. 199 (1944), 39 Illinois L.Rev. 85 (1944).

developed." University of Texas: Bennett, The Modern Lease, 16 Texas L.Rev. 47, 48 (1937).

We agree in general with Justice Holmes that, "It is revolting to have no better reason for a rule of law than that it was laid down in the time of Henry IV." [5] At the same time we are not unmindful of the cases in this state, beginning with Lea v. Hernandez, *supra*, which follow the common law rule with respect to the requirement of certainty in the creation of estates for years.

In view of our holding on appellants' point of error one, it is unnecessary to consider the other points. The judgment of the trial court is reversed, and here rendered that appellee take nothing, and that appellants recover the sum of $9,000.00.

*Reversed and rendered.*

5. Holmes, The Path of the Law, 10 Harvard L.Rev. 457, 469 (1897).