# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

NO. 03-07-00058-CV

**Merit Management Partners I, L.P. (formerly known as Merit Partners, L.P.); Merit Energy Partners III, L.P.; and Merit Energy Partners D-III, L.P., Appellants**

**v.**

**Walter D. Noelke, as general partner of the NF5 Family Limited Partnership, Appellee**

---

**FROM COUNTY COURT AT LAW NO. 2 OF TOM GREEN COUNTY
NO. 05C160-L2, HONORABLE PENNY ANNE ROBERTS, JUDGE PRESIDING**

---

# O P I N I O N

This appeal arises from a suit filed in county court seeking damages for breach of a lease agreement. The county court rendered judgment in favor of the Plaintiff/Appellee Walter D. Noelke as general partner of the NF5 Family Limited Partnership. The issue presented is whether the county court had jurisdiction to render the judgment. Defendants/Appellants Merit Management Partners I, L.P., Merit Energy Partners III, L.P., and Merit Energy Partners D-III, L.P. (collectively, "Merit") assert that while they have a real property lease with the NF5 Family Limited Partnership, they are not bound by the particular document or provisions at issue. They argue that rendering judgment based on the document and provisions in question necessarily involves adjudicating title to real property in the form of determining the nature and extent of their leasehold. We agree and hold that the county court was without jurisdiction over the lawsuit because the suit involves an adjudication of title to real property.

*Factual and Procedural Background*

This case involves the lease of a one-acre tract used as a pipe and equipment storage yard for servicing oil and gas properties. The pipe yard was originally leased by NF5's predecessors in interest to a predecessor in interest of Merit under the terms of a document titled "Pipe Yard Lease" dated June 1, 1978. The Pipe Yard Lease was for a term of twenty years and provided for annual rental payments. Under the Pipe Yard Lease, the lessee's rights were not assignable "without the express written consent of Lessor." After the Pipe Yard Lease's twenty-year term expired, NF5 entered into a two-page letter agreement (the "Letter Agreement") with its tenant at the time, Devon Energy Corporation ("Devon"). The Letter Agreement required compliance with the Pipe Yard Lease as modified by the Letter Agreement's additional terms, which include an increased lease rate adjustable according to future increases in the consumer price index, and a reimbursement provision for certain expenses incurred in connection with the Letter Agreement. Two years later, Devon assigned the lease to its affiliate Devon Energy Production Company ("Devon Production"). NF5 consented to this assignment in writing.

In 2002, Devon Production sold Merit various oil and gas property interests, including an oil and gas lease obtained from the Noelke family estate covering thousands of acres in Irion County. As part of this transaction, Devon Production was to assign to Merit its interest in the Pipe Yard Lease and Letter Agreement. On May 2, 2002, Devon Production requested NF5's consent to the assignment. NF5 requested financial and other information relating to Merit, which Merit provided. NF5 provided no further response to the request for consent to assignment for over a year.

2

In April 2003, not having heard from NF5 regarding the consent to assignment, Merit calculated the amount of rent due under the terms of the Letter Agreement at $3,108.79 and sent a check for that amount to NF5. By letter dated May 19, 2003, Noelke informed Merit that the amount due was actually $3,079.65 and returned Merit's check together with a copy of the Letter Agreement. Merit sent a check for the revised amount to NF5, dated May 29, 2003, which NF5 deposited on June 2, 2003.

While the exchange relating to the rent checks was occurring, NF5 (Noelke) sent another letter to Merit, dated May 20, 2003, stating that Devon Production had not obtained the required consent to assignment and "therefore Merit has no right to use of the Lessor's property."[1] The letter also stated that NF5 would consent to the assignment to Merit only under the terms of an enclosed nine-page document drafted by Noelke titled "Consent to Assignment." This new document—provided to Merit for the first time on June 3, 2003—purported to make multiple changes to the terms of the Pipe Yard Lease and Letter Agreement. Of particular relevance to this case, the Consent to Assignment increased the annual rental payment, created additional obligations to reimburse NF5 for its legal fees, time, and expenses, and added a liquidated damages clause. In addition, the Consent to Assignment purported to unilaterally amend the terms of the oil and gas leases and real property interests Merit purchased from Devon Production.[2] The Consent to

---

[1] Interestingly, Noelke did not send or copy this letter to the same address that he had sent the other correspondence regarding the rent checks. Merit's actual receipt of this letter was delayed until June 3, 2003.

[2] For example, the Consent to Assignment prohibited Merit, absent NF5's written consent, from assigning the oil and gas lease, making certain connections with wells and pipelines on third party lands, and changing various features of its oil and gas operations.

Assignment only had a single signature line for Noelke as general partner of NF5, and provided that Merit would be "deemed to have accepted" its terms by, at any time after June 9, 2003, "(1) using the pipe yard described in the Pipe-Yard Lease . . . ; (2) making the payment due of $3,079.65 as set out in [the Consent to Assignment]; or (3) making payments under any of the other Agreements." The term "Agreements," used throughout the Consent to Assignment, was defined to include twelve different documents, including the oil and gas leases, the Pipe Yard Lease, and the Letter Agreement, all of which were purportedly filed in the official public records of Irion County. NF5 (Noelke) filed the Consent to Assignment in the Irion County deed records on May 22, 2003, two days after mailing the document to Merit, several days before Merit saw the document, and well before having any response from Merit as to its acceptability.[3] Merit did not respond to the June 3, 2003 correspondence enclosing the Consent to Assignment.

Yet another year later, on May 26, 2004, NF5 (Noelke) sent Merit a demand for payment of $8,526.95 for legal fees, time, and expenses incurred in connection with preparing the 2003 Consent to Assignment. The contract provision Noelke relied on in making the demand for the $8,526.95 associated with the creation of the Consent to Assignment was, itself, a provision in the Consent to Assignment. The relevant provision states:

> Lessee shall reimburse Lessor for all of Lessor's attorney's fees and expenses, recording and abstracting fees, time, travel, and all other expenses, and all costs, losses, expenses, interest (including CPI adjustments), incurred incident to the

---

[3] The timing and nature of the exchange of correspondence regarding the rent payment, the timing of Noelke's filing of the Consent to Assignment, the fact that different addresses were used to transmit the different letters without copies to the known address, and the provisions of the Consent to Assignment relating to "deemed acceptance" raise some problematic questions.

negotiation, preparation, implementation, enforcement, interpretation, ratification, consent to assignment of, and/or litigation concerning this agreement and all other negotiations or agreements between NF5 and its predecessors and successors and Merit and its predecessors and successors, regardless of what party ultimately prevails in the event of litigation.

Merit refused to pay the $8,526.95, and on March 29, 2005, Noelke filed a breach of contract action on behalf of NF5 to recover this amount in the County Court at Law No. 2 of Tom Green County.

Noelke argues that Merit ratified the Consent to Assignment by its conduct, in accordance with the document's terms. Merit takes the position that it never agreed to the terms of the unilateral Consent to Assignment and, consequently, is not bound by any of its terms including those relating to "deemed acceptance." According to Merit, NF5's acceptance of Merit's $3,079.65 payment—which was made pursuant to the terms of the Letter Agreement attached to Noelke's May 19, 2003 letter—confirms that the Letter Agreement is the operative agreement between the parties. Merit likewise asserts that it paid its 2004 and 2005 rental payments pursuant to the terms of the Letter Agreement rather than the Consent to Assignment, and NF5 consented to the assignment of the Pipe Yard Lease and Letter Agreement without amendment by accepting the payments without objection.

The Letter Agreement between NF5 and Merit's predecessor Devon contained the following language, which Noelke claims binds Merit to the terms of the Consent to Assignment regardless of the "deemed acceptance" provisions of the Consent to Assignment:

> Devon will be bound by the Agreements and this Letter Agreement as long as Devon's equipment, facilities, or operations affect Lessor's interests, and Devon is bound by all terms benefitting Lessor's interests in all documents affecting Lessor's interests of legal record or that may hereafter be executed by Lessor.

5

The Consent to Assignment certainly affects and benefits NF5's interests of legal record and was executed by NF5. Thus, according to Noelke, it is binding on Merit pursuant to the terms of the Letter Agreement in addition to the "deemed acceptance" provisions of the Consent to Assignment. Merit counters that to the extent the Letter Agreement provision purports to give NF5 the right to unilaterally change or revoke existing agreements, the provision is invalid and unenforceable. Merit also argues that a more reasonable interpretation of the provision is that the term "documents" refers not to any document that Noelke chooses to unilaterally file in the county deed records, but rather to any agreements between NF5 and a third party that might impact the pipe yard incidentally.

The Letter Agreement—which, together with the original Pipe Yard Lease, Merit asserts is the applicable lease agreement—also requires reimbursement for legal fees, time, and expenses, but contains less expansive language:

> Devon will reimburse Lessor for all of Lessor's (1) attorney's fees and expenses, (2) surveyor's fees, and (3) time, travel and all other costs, losses, expenses, interest (including CPI adjustments), incurred incident to the negotiation, preparation, implementation, enforcing, and/or interpreting of this Agreement.

Merit argues that this provision does not require reimbursement of expenses incurred in connection with any document *other than* the Letter Agreement itself. Noelke counters that even if the Letter Agreement were the applicable lease agreement, any amounts incurred in preparing the Consent to Assignment were in fact incurred in connection with the "implementation" of the Letter Agreement because the Pipe Yard Lease requires the lessor's written consent to any assignment.

6

In addition to the breach of contract claim, Noelke amended his pleadings in the trial court to add a claim for liquidated damages. The Consent to Assignment provided for NF5's recovery of $100 per day for violation of its reimbursement provision. According to the Consent to Assignment:

> The parties agree that it would be difficult—if not impossible—to determine the actual costs to Lessor of the specific breaches of this agreement identified above. The parties have, therefore, agreed to this provision for liquidated damages to compensate Lessor, and not as a penalty. Each party agrees that the amounts of liquidated damages specified above are a reasonable forecast of just compensation. Lessee agrees that it will not dispute the reasonableness of those liquidated amounts, will not claim that those amounts are punitive in nature or unconscionable or against public policy.

In response, Merit argued that it was not subject to the Consent to Assignment at all and, alternatively, that the liquidated damages provision was an unenforceable penalty.

In his amended pleadings, Noelke also asserted an alternative claim for trespass in the event that the Consent to Assignment was found to not be binding on Merit. Under this alternative claim, Noelke took the position that if the Consent to Assignment was not binding on Merit, then NF5 never consented to Devon Production's assignment to Merit, and Merit was a malicious trespasser with no right of possession.

Prior to trial, Merit filed a motion to dismiss for lack of subject-matter jurisdiction on the basis that a suit in which title to real property is at issue may not be tried in county court. This motion was denied. Noelke filed and the court granted a motion for partial summary judgment in favor of NF5. The trial court found as a matter of law that Merit was bound by the Consent to Assignment, that Merit was required to pay for all legal fees, time, and expenses due

under the terms of the Consent to Assignment, and that until such expenses were reimbursed Merit owed liquidated damages of $100 per day under the terms of the Consent to Assignment. The case then proceeded to a jury trial on the issues of damages and attorneys' fees. The jury found that Merit owed $4,860.69 for pre-suit legal fees, $23,577.77 for Noelke's time and expenses, $114,029.73 for attorneys' fees relating to the trial, $45,000 in attorneys' fees for an appeal to this Court, and $85,000 in the event of an appeal to the Texas Supreme Court. In its judgment, the county court reduced the jury's damage award for time and expenses by $280, but otherwise awarded the full damages found by the jury and added an award of $86,000 in liquidated damages to NF5, along with pre- and post-judgment interest and costs.

On appeal, Merit argues that: (1) the county court lacked jurisdiction because the case requires the resolution of an issue of title to real property; (2) the Consent to Assignment was not binding on Merit, and, therefore, Noelke was not entitled to the legal fees, time, and expenses incurred in preparing the Consent to Assignment; (3) the liquidated damages provision in the Consent to Assignment was an unenforceable penalty and it was error to award both liquidated damages and actual damages; and (4) the jury's award of attorneys' fees is not supported by the record and should be reduced. We agree with Merit that the county court did not have jurisdiction over the lawsuit. Consequently, we vacate the trial court's judgment based on Merit's jurisdictional argument and do not reach Merit's alternative contentions.

### *Subject-Matter Jurisdiction over Questions of Title to Real Property*

Whether a trial court has subject-matter jurisdiction is a question of law subject to de novo review. *Texas Natural Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d

8

849, 855 (Tex. 2002). If we determine the trial court lacks subject-matter jurisdiction, we must reverse the trial court's judgment and dismiss the case. *See City of Garland v. Louton*, 691 S.W.2d 603, 605 (Tex. 1985).

County Court at Law No. 2 of Tom Green County is a statutory county court. *See* Tex. Gov't Code Ann. § 25.2281 (West 2004). It does not have jurisdiction in "a suit for the recovery of land." *Id.* § 26.043(8) (West 2004); *see also id.* § 25.0003(a) (West Supp. 2008) (providing that statutory county courts have the same jurisdiction as prescribed by law for constitutional county courts). *Compare id.* § 25.2162(a) (West 2004) (granting a county court at law in Starr County jurisdiction over controversies involving title to real property), *with id.* § 25.2282 (West 2004) (not granting such jurisdiction to a county court at law in Tom Green County). Thus, if this lawsuit constitutes a suit for the recovery of land, the county court did not have subject-matter jurisdiction to adjudicate the claims.

A suit "for the recovery of land" is a suit that determines title. *See, e.g.*, *Doggett v. Nitschke*, 498 S.W.2d 339, 339 (Tex. 1973) ("A county court does not have jurisdiction to try questions of title to land."); *Chambers v. Pruitt*, 241 S.W.3d 679, 684 (Tex. App.—Dallas 2007, no pet.) ("District courts generally have exclusive jurisdiction to determine title to real property."). Suits for the recovery of land include more than simply disputes over the identity of the fee simple owner. *See, e.g.*, *Coughran v. Nunez*, 127 S.W.2d 885, 887 (Tex. 1939) (expressing "no doubt" that easements "constitute an interest in real estate," a dispute over the existence of which "necessarily involved the trial of title to real estate"); *Stewart v. Rockdale State Bank*, 79 S.W.2d 116, 118-19 (Tex. 1935) (county court does not have jurisdiction to determine a claim of homestead, to correct

9

a deed, or to establish whether a tract of land is community property or separate property); *State v. Reece*, 374 S.W.2d 686, 688 (Tex. Civ. App.—Houston 1964, no writ) (validity of deed restrictions is question of title). A leasehold is an interest in real property, and a dispute over the existence of a leasehold involves a question of title to real property. *See Gottschalk v. Gottschalk*, 212 S.W.2d 223, 224 (Tex. Civ. App.—Austin 1948, no writ) (because action "could not be maintained without invalidating the lease," district court alone had jurisdiction).[4] Moreover, a dispute involving not just whether a leasehold exists, but its extent and parameters, presents a title question for the district court. *See Doggett*, 498 S.W.2d at 339 (issue of whether lease created a tenancy at will or an estate for years "presents a dispute about the title to land"). *Cf. Lower Nueces River Water Supply Dist. v. Cartwright*, 319 S.W.2d 158, 160 (Tex. Civ. App.—San Antonio 1958) (duration and extent of easement are title disputes), *aff'd as modified*, 328 S.W.2d 752 (Tex. 1959).

Merit argues that the existence and extent of its leasehold rights are so involved in the case as to make Noelke's claims a suit for the determination of the existence and extent of Merit's leasehold and, thus, a determination of title to real property. Noelke argues that he is merely seeking monetary damages under a contract, not an adjudication of title to any real property, and the nature and extent of Merit's leasehold comes into the case only incidentally.

---

[4] By statute a justice court has jurisdiction over a forcible entry and detainer action. *See* Tex. Prop. Code Ann. § 24.004 (West 2000). The justice court (or county court on appeal) cannot, however, resolve any questions of title beyond the immediate right to possession. *See Bacon v. Jordan*, 763 S.W.2d 395, 396 (Tex. 1988); *Padilla v. NCJ Dev., Inc.*, 218 S.W.3d 811, 815 (Tex. App.—El Paso 2007, pet. dism'd w.o.j.).

10

*History of Applicable Law*

Case law on the question of what constitutes a claim to "recover land" that is beyond the jurisdiction of the county court has had an interesting history. According to an 1881 opinion of the Commission of Appeals, while it "may be very material for the party to prove his title" in order to obtain the relief sought, the county court retains jurisdiction where the plaintiff "does not sue for or recover the land" and the judgment would not "determine his right to the land, or in the least affect the title to it." *Owens v. Prather*, 1 White & W. 640, 641 (Tex. Comm'n App. 1881) (not precedential). The following causes of action could, therefore, be determined in the county court: "suits for trespasses upon land, or cutting and removing timber from it, or for rent or use and occupation of it," *id.* at 640-41; "causes of action *ex contractu* relating to land, but not involving the right or ownership thereof," *Scripture v. Kent*, 1 White & W. 592, 594 (Tex. Comm'n App. 1881) (not precedential); "torts or contracts involving simply the right to the possession of land, without affecting the rights of the parties to the land," *id.*; and a cause of action for the breach of warranty of title to real estate, *Patrick v. Laprelle*, 40 S.W. 552, 552 (Tex. Civ. App.—Austin 1897, writ dism'd) (citing *McGregor v. Tabor*, 26 S.W. 443, 444 (Tex. Civ. App.—Fort Worth 1894, no writ), and *Williams v. Truitt*, 1 White & W. 258, 258 (Tex. Ct. App. 1877)).

This early case law introduced the concept that where a question of title arises only "incidentally," the county court is not deprived of jurisdiction. In *Hatch v. Allan & Swartz*, 3 Willson 277 (Tex. Ct. App. 1887), for example, the plaintiff sued for conversion of his lumber, which he alleged had been lying on his property when the defendant converted it. Title to the property on which the lumber was lying did not affect the defendant's liability, but the plaintiff's

11

recovery of exemplary damages depended on whether the plaintiff, in fact, owned the land on which the lumber had been lying. *See* 3 Willson at 278. The court concluded that since title arose in the suit for damages only incidentally, the county court had jurisdiction. *Id.*

Conversely, courts during the same time period found that even where recovery of land was not sought in the plaintiff's pleadings or the judgment, the question of title could be too involved in the suit to be merely "incidental." For instance, in a lawsuit involving a dispute over the defendant's ability to add windows to a party wall (the defendant's building had three stories, while the plaintiff's had only two), the Texas Supreme Court held that the district court had jurisdiction because title was "so far involved," given "the nature of the suit, the injury complained of, and the relief sought." *Dauenhauer v. Devine*, 51 Tex. 480, 485-87 (1879). County courts were also held to have no jurisdiction to enforce an easement by injunction because title was "so far involved." *See Gascamp v. Drews*, 2 Willson 73, 74-75 (Tex. Ct. App. 1884) (quoting *Scripture*, 1 White & W. at 596-97).

A difficult question arises—one that is particularly relevant here—where recovery of tort or contract damages hinges upon a dispute as to who holds title to land. Noelke points to the Galveston Court of Appeals' opinion in *City of Victoria v. Schott*, 29 S.W. 681 (Tex. Civ. App.—Galveston 1895, no writ) in support of his contention that issues relating to title to real property are incidental in this case. In *Schott*, the plaintiff alleged that gravel had been removed from her land without permission and sought damages. *See* 29 S.W. at 681. The defendant answered by claiming title to the land. *See id.* Thus, the outcome of plaintiff's damages claim depended entirely on the question of title. The court stated as follows:

> In actions for a debt or damages, in amounts within the jurisdiction of the county courts, the right of recovery may depend upon the title to land. . . . Thus the question of title comes incidentally into the case, and must be decided before the court can render judgment settling the claims in dispute. But in doing so it does not adjudicate or settle the title to the land, nor the right to recover it, but simply determines that the plaintiff is or is not entitled to recover the thing sued for within the jurisdiction.

*Id.* The court appeared to rely on the idea that it was not adjudicating title for the purpose of awarding the property to one of the litigants, but simply determining a title issue as a sort of predicate to the claims at issue between the parties. Although a determination of title was essential in reaching the judgment, the court nonetheless held that title was merely incidental to the primary dispute—the action for damages.

Some courts have followed this approach, determining that the question of title could be merely incidental in a suit for damages even though the question of title was essential and determinative as to liability. *See, e.g.*, *Putty v. Putty*, 6 S.W.2d 136, 137-38 (Tex. Civ. App.—Amarillo 1928, no writ) (plaintiffs sought rental value of land based on their disputed interest in the land); *Robinson v. Clymer*, 170 S.W. 107, 107-08 (Tex. Civ. App.—Dallas 1914, writ denied w.o.j.) (same). However, a different approach was adopted in *Henslee v. Boyd*, 107 S.W. 128 (Tex. Civ. App.—Dallas 1908, no writ). In that case, the plaintiff had sued for damages resulting from the obstruction of his easement through the back lot of the defendant's neighboring business (the easement allowed vehicles to access the plaintiff's back lot). 107 S.W. at 128. Even though the plaintiff sought damages rather than an establishment of his right to the easement, the court held that because the plaintiff had to prove title in order to obtain any damages, the county court was without jurisdiction. *See id.* at 129. The court stated, "[T]he question as to

13

whether [plaintiff] was the owner of an easement in, to, and over [defendant's] land formed the basis of his right to recover judgment, and the burden was on him to establish that fact before he could recover judgment." *Id.* Faced with essentially the same situation as described by the court in *Schott*—an action "for a debt or damages," where a question of title "must be decided before the court can render judgment," but the judgment itself "does not adjudicate or settle the title to the land," *see Schott*, 29 S.W. at 681—the court in *Henslee* reached the opposite jurisdictional conclusion from the *Schott* court.

*Coughran v. Nunez*, a Texas Commission of Appeals opinion adopted by the Texas Supreme Court, persuades us that *Henslee* articulates the correct approach. In *Coughran*, the plaintiff sought to enforce an easement by injunction. 127 S.W.2d at 886-87. The supreme court observed that, while it is true that a county court retains jurisdiction if title to real property is only incidentally involved, in this case it was necessary for the plaintiff to establish his right to the real property by proof. *See id.* at 887. "This necessarily involved the trial of title to real estate. To assume that he owned the easement is to assume the whole case in his favor." *Id.* In holding that the county court had no jurisdiction over the plaintiff's lawsuit, the court expressed approval of two cases from courts of appeals that held a county court did not have jurisdiction to enforce an easement by injunction. *See id.* at 888 (quoting *Gascamp*, 2 Willson at 74-75, and citing *Hinojosa v. Corona*, 254 S.W. 1116 (Tex. Civ. App.—San Antonio 1923, no writ)). More importantly, the court quoted an extensive portion of *Henslee*, including both its analysis and its holding, and concluded that *Henslee*'s reasoning "is sound." *Id.* at 887-88 (quoting *Henslee*, 107 S.W. at 129). In *Coughran*, the Texas Supreme Court agreed with the reasoning in *Henslee*, and we believe

14

*Henslee*'s holding conflicts with the holding in *Schott*. Consequently, we are of the view that the *Schott* holding is no longer an accurate statement of the law.[5]

The Texas Supreme Court's holding in *Coughran* was followed later that same year in *Kegans v. White*, 131 S.W.2d 990 (Tex. Civ. App.—Eastland 1939, writ ref'd). In that case, the plaintiffs' right to recover the "reasonable value of the occupancy and use" of the land at issue depended on their disputed one-half interest in that land. 131 S.W.2d at 991. Thus, the court was faced with the same issue faced by the courts in *Schott* and *Henslee*: the suit was for damages and although the judgment itself would not grant relief with respect to title, the adjudication of title was necessary to render the judgment. The court agreed with the pre-*Coughran* case law that if title is involved in only "a collateral or incidental way," the county court would have jurisdiction. *See id.* at 992-93. The court observed, "The dividing line between the classes of cases, cognizable solely in the respective courts, is not always so apparent." *Id.* at 993. The court then observed that the question of title was both essential—that in order to "recover the sum prayed for, or any part thereof, they must first establish their right and title to the land"—and determinative, as it "goes to the heart of the lawsuit." *Id.* at 993-94. Citing *Henslee* and the Texas Supreme Court's *Coughran* and

---

[5] We, therefore, decline to look for guidance from the two cases subsequent to *Coughran* that follow *Schott*'s approach regarding county court jurisdiction and yet fail to address *Coughran* or any cases decided thereafter. *See Chitsey v. Lockshin*, No. 03-00-00663-CV, 2001 Tex. App. LEXIS 7297, at *9-11 (Tex. App.—Austin Nov. 1, 2001, pet. denied) (not designated for publication) (county court could adjudicate dispute over which party had the right to collect rent from tenants, which required determination of whether defendant's foreclosure of plaintiff's title was valid); *Fry v. Ahrens*, 256 S.W.2d 115, 116 (Tex. Civ. App.—Galveston 1953, no writ) (referring to *Schott* as the "leading case" regarding whether a title question is only incidentally involved). We need not consider whether those cases would have reached a different result had they addressed *Coughran*'s approval of *Henslee*.

15

*Dauenhauer* decisions as having "application and controlling effect," the court held that the suit could only be adjudicated in district court. *See id.* at 994. The court concluded, "It is pretty clear, we think, that title is not involved in a merely incidental or collateral way, but is actually involved as the basis, as well as measure of right of any recovery." *Id.* at 995. Because the dispute over title determined both the right to damages as well as the extent of damages, the question of title was not incidental or collateral.

While some of the early case law excluded from a county court's subject-matter jurisdiction only those cases in which the court's judgment would include an award of title to land, *see, e.g.*, *Schott*, 29 S.W. at 681, under *Coughran* the district courts also have exclusive jurisdiction over cases in which a judicial determination of a title dispute between the parties is necessary to render the judgment, even if the judgment itself does not include an express grant of relief with respect to title, *see Kegans*, 131 S.W.2d at 994-95.

> But when the gist of a cause of action, whether in form of trespass to try title or in any other form, rests upon the proposition that the title to land asserted by the plaintiff is superior to that of the defendant, the district court alone has jurisdiction to adjudicate the matter.

*Edwards v. Hefley*, 22 S.W. 659, 661 (Tex. Civ. App.—Austin 1893, no writ).

*Application*

Applying the principles of this case law to this case, we first note that in determining whether a lawsuit involves the adjudication of title, we are not limited to the plaintiff's framing of the causes of action in his pleadings. Regardless of the plaintiff's characterization of his claims, if

16

the "gist" of a cause of action for damages is, in fact, an adjudication of title, a county court does not have jurisdiction over the cause of action. *See Galley v. Hedrick*, 127 S.W.2d 978, 982 (Tex. Civ. App.—Amarillo 1939, no writ) ("Our conclusion is that upon the filing of appellee's answer and the presentation of the evidence, the trial court could not have decided otherwise than that the title and possession of the described land was directly involved . . . ."); *Gossett v. Manley*, 43 S.W.2d 622, 623 (Tex. Civ. App.—Waco 1931, writ ref'd) (finding no county court jurisdiction over suit "in the form of an action at law to recover only the sum of $386.98" under a contract to buy real property because it "necessarily involved a rescission of such contract, and, though such relief was not specifically prayed for in his petition, he could not recover thereon without such rescission"); *Bennett v. Ross*, 278 S.W. 314, 315 (Tex. Civ. App.—Amarillo 1925, no writ) ("If the question of title, however, should become directly involved, the district court alone would have jurisdiction."). *Cf. Renwar Oil Corp. v. Lancaster*, 276 S.W.2d 774, 776 (Tex. 1955) (holding that, for purposes of venue statute, because agreements at issue "are essentially a conveyance of an interest in realty, [the adjudication sought] constitutes an effort to remove cloud from title, even though alleged as an effort to construe a contract" (citation omitted)).

In his pleadings, Noelke does not directly put in issue a question of title to real property. Instead, he is careful to allege a breach of contract to pay legal fees, time, and expenses, seek liquidated damages due under the terms of the Consent to Assignment, and assert an action for trespass in the event the Consent to Assignment is found unenforceable. While Noelke's claims do not, on their face, put title to real property at issue, we look at "the basis of his right to recover judgment." *Coughran*, 127 S.W.2d at 888 (quoting *Henslee*, 107 S.W. at 129). The writing at issue

17

in each claim, the Consent to Assignment, is a document that purports to affect an interest in various leaseholds as well as govern and circumscribe a variety of real property interests. *See Doggett*, 498 S.W.2d at 339. The dispute is over whether this unilateral Consent to Assignment, filed by Noelke in the deed records, is valid and enforceable and articulates the parameters of Merit's leasehold interest. Whether the Consent to Assignment governs Merit's leasehold interest, in turn, determines both Noelke's right to damages and the extent of any damages. Title to real property in the form of the extent and parameters of Merit's leasehold interest is, therefore, directly involved in the adjudication of this dispute. The next question is whether the title issue is merely incidental or collateral to the suit.

If the right of recovery in a suit depends, at least in part, upon the title to land, but there is no real dispute between the parties over the question of title, the question of title is incidental. *See Gottschalk*, 212 S.W.2d at 224 (county court would have jurisdiction to enjoin trespass or injury to land if "neither the title to an interest in or right of possession of land is in dispute"); *J. M. Huber Petroleum Co. v. Yake*, 121 S.W.2d 670, 672-73 (Tex. Civ. App.—Amarillo 1938) (county court had jurisdiction over suit for damages caused by defendant's easement when plaintiff "does not contest [defendant's] title under its right-of-way deed nor make any claim to the portion of the real estate occupied by [defendant's] pipe line"); *Kalteyer v. Wipff*, 65 S.W. 207, 207 (Tex. Civ. App.—San Antonio 1901, no writ) (where prior judgment had already adjudicated plaintiffs' title, proof of title in order for plaintiffs to recover one-third rental value, while essential, was "a collateral matter only"); *Porter v. Porter Bros.*, 2 Willson 381, 382-83 (Tex. Ct. App. 1884) (although question of homestead was relevant to the suit, county court retained jurisdiction, since

18

"[i]t cannot be disputed that [defendants] . . . had the legal title to the land, and were occupying the same as a homestead"). Therefore, even if title to real property is a necessary predicate to recovery in a case for money damages, it is incidental to the case if there is no real dispute over title that must be resolved by the county court.

Here, there is a serious and very much contested dispute as to title to real property. In fact, it is the crux of the dispute. Noelke bases his breach of contract and liquidated damages claims on the validity of the Consent to Assignment as a binding lease agreement. Merit's primary defense to these claims is that the Consent to Assignment is not binding and that the Letter Agreement, originally entered into between NF5 and Devon, is the operative and binding lease agreement. Noelke's trespass claim is based on the proposition that if indeed the Consent to Assignment is not a binding lease agreement, then there was no lease between NF5 and Merit whatsoever and Merit is a trespasser. The entire dispute turns on the extent of Merit's leasehold and the terms that govern that leasehold. The county court cannot adjudicate Noelke's claims without resolving the contested issue of what is the extent and nature of Merit's leasehold interest.

Noelke's claim for legal fees, time, and expenses hinges on which lease provisions in which lease documents are applicable. While both the Consent to Assignment and the Letter Agreement contain reimbursement provisions, their terms differ. The Consent to Assignment expressly requires reimbursement for its own "negotiation, preparation, implementation, enforcement, interpretation, ratification, consent to assignment of, and/or litigation." The Letter Agreement requires reimbursement only for the "negotiation, preparation, implementation,

19

enforcing, and/or interpreting" of the Letter Agreement itself (although Noelke argues that the preparation of the Consent to Assignment constituted the "interpretation" of the Letter Agreement as to Merit). Furthermore, Noelke can recover on his liquidated damages claim only if the Consent to Assignment is valid and enforceable, because the Letter Agreement does not contain a liquidated damages provision. By its very terms, Noelke's alternative claim for trespass is contingent on the court's determination that the Consent to Assignment is *not* a binding lease agreement as to Merit.

Noelke's argument, at its essence, is that because the damages he seeks are unrelated to the issue of possession, it is not necessary for the court to address the issue of possession, and thus the issue of which lease document is binding makes any title issue, at most, incidental. The most recent Texas Supreme Court opinion to consider a county court's jurisdiction over title issues illustrates when adjudication of lease rights is incidental to the dispute. In *Doggett v. Nitschke*, the county court had to determine the nature of a leasehold (whether a lease of real property was a tenancy at will or an estate for years) in order to determine whether the plaintiff was entitled to the funds sought (the portion of the amount received from the property's condemnation equal to the value of the leasehold interest). *See Nitschke v. Doggett*, 489 S.W.2d 335, 335-36 (Tex. Civ. App.—Austin 1972), *rev'd*, 498 S.W.2d 339 (Tex. 1973). The Texas Supreme Court held that this was a question of title to land and the county court did not have jurisdiction. *See Doggett v. Nitschke*, 498 S.W.2d at 339. In contrast, Noelke's cause of action requires the court to determine the applicable lease *agreement* in order to determine whether he is entitled to money damages. The determination of which lease agreement is enforceable may, in turn, govern the nature of the

20

leasehold, but, according to Noelke, he is not technically seeking an adjudication of that issue. Under Noelke's reasoning, where the court must determine the validity and interpretation of a contract in order to award damages under that contract, the fact that the contract is a lease document is insufficient to make the question of title in the case more than collateral or incidental.

We disagree with Noelke's reasoning. A county court does not have jurisdiction over a lawsuit if the gist of the suit is a title dispute. *See Edwards*, 22 S.W. at 661. To determine the extent to which title and possession are involved, we look to "the nature of the suit, the injury complained of, and the relief sought," as the Texas Supreme Court did in *Dauenhauer*. *See Dauenhauer*, 51 Tex. at 487. While Noelke's complaint, at this point, is the breach of a contractual provision requiring reimbursement of expenses, there is no escaping that the contract involved is a lease document designed to govern real property interests.[6] Although Noelke asserts that his causes of action have nothing to do with Merit's leaseholds, the damages sought—legal fees, time, and expenses incurred and liquidated damages arising from those amounts' non-payment—would never have been incurred in the first place but for NF5's efforts to alter the nature of the leaseholds at issue. In addition, Noelke sought and obtained a judgment stating that the Consent to Assignment was an "unambiguous and legally binding contract[] between Plaintiff and Defendants." This document is a purported lease agreement filed in the county deed records. As we set forth in the factual background in this opinion, such a determination not only impacts Noelke's right to recover damages, but also defines the nature of Merit's leasehold interest in the pipe yard and, furthermore,

---

[6] It is also worth noting that the aspects of the Consent to Assignment that will ultimately be of the most value to NF5 and Noelke are the alterations to the nature of the various leasehold interests held by Merit.

21

alters the nature of the oil and gas lease. Both leaseholds are real property interests. Thus, the judgment Noelke sought and obtained was in essence an adjudication of title to real property. We see little distinction between the validity of a leasehold interest being the controlling issue and the validity of a document that defines a leasehold interest being the controlling issue. Therefore, although Noelke has framed the lawsuit as a breach of contract action, we think the true nature of his suit is the nature of the leasehold between NF5 and Merit.

The true nature of the dispute in this case can be illustrated by asking the question, "Could the judgment in this case have claim preclusive effect with respect to the validity and enforceability of the Consent to Assignment, a document that directly prescribes the nature and extent of a variety of interests in real property?" If so, title to real property is involved. While we do not express any opinion on the issue of claim preclusion, we note that, in a concurrent lawsuit filed in district court directly concerning the title issues, Noelke has argued that the county court judgment in this case is res judicata on the question of whether the Consent to Assignment is legally binding, including its provisions relating to leasehold interests. This comes very close to an admission by Noelke regarding the true nature of the dispute in this case. If the adjudication of the claims asserted in county court could arguably have claim preclusive effect on a question of title to real property, we think even the earliest case law reserved such claims for the district court's jurisdiction. *See Owens*, 1 White & W. at 641 (not precedential) (basing county court jurisdiction on the fact that the judgment would not "determine [the plaintiff's] right to the land, or in the least affect the title to it"). The Texas Supreme Court has held that a county court does not have jurisdiction if assuming the plaintiff holds title "is to assume the whole case in his favor."

22

*Coughran*, 127 S.W.2d at 887. In this case, if we assume that the Consent to Assignment is binding, not only might we be assuming the whole case in Noelke's favor (while we do not here reach the merits of Noelke's claims, we note that the county court found Merit liable as a matter of law), but we might be assuming the determination of Noelke's leasehold rights in his favor.

Two additional factors support the conclusion that Noelke's claims in this case involve a title dispute with respect to real property interests. First, in order to show that the Consent to Assignment was a binding agreement as a matter of law, Noelke relied on the Letter Agreement provision binding Merit to "all terms benefitting Lessor's interests in all documents affecting Lessor's interests of legal record . . . that may hereafter be executed by Lessor." To show that this provision applied, Noelke asserted that the Consent to Assignment was executed by NF5, was filed in the county deed records, and "clearly" benefitted NF5's interests of legal record. Noelke then had to show that the Consent to Assignment impacted the nature of the pipe yard leasehold in order to claim Merit was bound by its terms. Thus, while Noelke may have reserved for the district court his argument that the Consent to Assignment impacts Merit's leasehold interests because it is a binding agreement, in the county court he asserted that because the Consent to Assignment impacts Merit's leasehold interests, it is a binding agreement. The adjudication of whether the Consent to Assignment impacted Merit's leasehold interest was, therefore, "necessary in order to settle the controversy," *see Kegans*, 131 S.W.2d at 993, and "formed the basis of [Noelke's] right to recover judgment, and the burden was on him to establish that fact before he could recover judgment," *see Coughran*, 127 S.W.2d at 888 (quoting *Henslee*,

23

107 S.W. at 129). This was adjudicating a question of title to real property, over which the district court has exclusive jurisdiction.

Second, Noelke's pleadings assert a trespass claim in the event that the court determined the Consent to Assignment is not a legally binding contract. Noelke's argument that title is only incidentally involved becomes less credible when his petition includes a cause of action dependent on Merit's lack of any leasehold interest in the pipe yard whatsoever. At oral argument, Noelke's counsel asserted that the trespass claim did not in fact indicate any impact on Merit's leasehold estate in the lawsuit because without the Consent to Assignment there was no leasehold estate. There is no greater impact to a leasehold estate than its complete elimination. *See Gottschalk*, 212 S.W.2d at 224 (county court had no jurisdiction over action that "could not be maintained without invalidating the lease, upon which [the defendant's] right of possession depended"). Noelke's trespass claim—as well as his pleadings filed in related litigation—reveal that Noelke, himself, believes the adjudication in the county court of whether the Consent to Assignment is binding would be an adjudication of whether Merit had a leasehold estate, and, thus, under the authority of the Texas Supreme Court's *Dauenhauer*, *Coughran*, and *Doggett* opinions, Noelke's claims present a dispute with respect to title to real property, over which the county court does not have jurisdiction. As Noelke's trespass claim makes clear, the question of title to real property "goes to the heart of the lawsuit." *See Kegans*, 131 S.W.2d at 993.

### *Conclusion*

The issue of title to real property in Noelke's claims is not incidental or collateral. The question of title lies at the heart of Noelke's claims, and, therefore, the county court did not have

24

jurisdiction over the lawsuit. "If the trial court lacks subject matter jurisdiction, the appellate court can make no order other than reversing the judgment of the court below and dismissing the cause." *Louton*, 691 S.W.2d at 605. The county court lacked subject-matter jurisdiction over this cause. Consequently, we reverse and vacate the judgment of the county court, and dismiss this cause.

_____

G. Alan Waldrop, Justice

Before Justices Puryear, Waldrop and Henson;
  Dissenting Opinion by Justice Henson

Vacated and Dismissed for Want of Jurisdiction

Filed:   October 3, 2008