COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

|  |  |  |
|---|---|---|
| | § | |
| IN RE:   ELAMEX, S.A. DE C.V., | § | No. 08-11-00110-CV |
| ELAMEX USA, CORP., AND | § | AN ORIGINAL PROCEEDING IN |
| MOUNT FRANKLIN FOODS, L.L.C., | § | MANDAMUS |
| | § | |

# **O P I N I O N**

In this original proceeding, Relators seek to compel Respondent to vacate an order denying their motion to dismiss for lack of jurisdiction.   For the reasons stated below, we deny Relators' petition for writ of mandamus.

## **FACTUAL AND PROCEDURAL BACKGROUND**

This case centers on a dispute among entities and individuals involved in the candy business.

### *The Parties*

The two Plaintiffs in the underlying suit are Real-Parties-in-Interest in this mandamus action.   One of the Plaintiffs is Dulces Arbor, S. de R.L. de C.V. ("Dulces Arbor"), a Mexican corporation.   The other is Blueberry Sales, LLP ("Blueberry Sales"), a Delaware limited liability partnership that has its principal place of business in El Paso.[1]   Blueberry Sales is the American counterpart to Dulces Arbor.[2]

There are seven Defendants in the underlying lawsuit, but only three of them are Relators

---

[1] Dulces Arbor and Blueberry Sales are also Third-Party Defendants in the underlying suit.

[2] In the underlying suit, Raymond Ducorskyand Brad Ducorsky are Third-Party Defendants, as well as Third-Party Plaintiffs and Cross-Claimants, whereas Mark Ducorsky is only a Third-Party Defendant.   None of the Ducorskys are a party in this mandamus action.

in this mandamus action.   Relators are Elamex, S.A. de C.V. ("Elamex Mexico"), Elamex USA, Corp. ("Elamex USA"), and Mount Franklin Foods, LLC ("MFF").   Elamex Mexico is a Mexican corporation doing business in Texas.   Elamex USA is a Delaware corporation doing business in Texas.   MFF is a Texas limited liability company.   These three entities are interrelated – Elamex Mexico owns Elamex USA, which in turn owns MFF – and all operate from or have offices in El Paso, Texas.

The other Defendants in the underlying suit are Sunrise Candy, LLC ("Sunrise Candy"), Casas Grandes Confections, LLC ("Casas Grandes"), Robert J. Whetten ("Whetten"), and David Stewart ("Stewart").   Sunrise Candy is a Nevada limited liability company doing business in Texas.   Casas Grandes is also a Nevada limited liability company doing business in Texas.   Like Relators, these entities have offices in El Paso.   Whetten is a resident of El Paso, who at various times was an executive or board member for Casas Grandes, Elamex USA, Elamex Mexico, and MFF as well as some other entities.   Like Whetten, Stewart is a resident of El Paso, who at various times was also an executive for Elamex Mexico, Sunrise Candy, and MFF.

### The Mexican Real Property

At the heart of the dispute between Plaintiffs and Defendants is a building located in Cuidad Juarez, Mexico (the Mexican real property) used to manufacture candy.   Throughout the litigation, Dulces Arbor has maintained that it owns the Mexican real property, which it expanded with financing provided by several lenders, including Bank of the West.[3]   Dulces Arbor attempted to sell the Mexican real property to several entities affiliated with the Defendants, but negotiations broke down between Dulces Arbor and Whetten and Stewart and the sale was never

---

[3]  Bank of the West is now WestStar Bank.

consummated.[4]   The parties disagree about who is to blame for the failure to reach an agreement. In any event, Dulces Arbor's assertion that it owned the Mexican real property remained unchallenged until early last year when Relators claimed in their motion to dismiss for lack of subject matter jurisdiction that Dulces Arbor had transferred ownership of the Mexican real property into a trust for the benefit of the lenders, including Bank of the West.

### *The Personal Property*

Another dispute between Plaintiffs and Defendants concerns machinery and computers (the personal property) originally leased by Blueberry Sales from C Leasing Company, a subsidiary of Bank of the West.   Except for one computer that remained in El Paso but was nonetheless part of the manufacturing process, the personal property was installed on the Mexican real property.   Blueberry Sales eventually purchased the personal property.

### *The Leases*

Several leases concerning the occupancy and use of the Mexican real property play a large role in this dispute as well.   Originally, Dulces Arbor leased the Mexican real property to Blueberry Sales.   However, that changed when Blueberry Sales and another entity named Dulces Blueberry, S.A. de C.V. ("Dulces Blueberry") combined assets with another entity to create Simply Goodies, LLP ("Simply Goodies").[5]   Following this combination, Dulces Arbor leased the Mexican real property to Dulces Blueberry.   Simply Goodies acted as guarantor of this lease. Although the mandamus record is unclear as to what exactly occurred, MFF's maquiladora

---

[4] Whetten referred the Ducorskys to an attorney in El Paso named Hector Delgado to represent Dulces Arbor in the negotiations.   The Ducorskys were apparently unaware that Delgado was representing the other entities involved in the transaction.

[5] Bridge Healthcare Finance, LLC, and Bridge Opportunity Finance, LLC (collectively "Bridge") provided financing for this transaction.

counterpart, Confecciones de Juarez, S.A. de C.V. ("Confecciones de Juarez"), currently has a submaquila agreement with Dulces Blueberry to use the Mexican real property.

### *The Lawsuit*

At the time of this mandamus action, Plaintiffs' live pleading was their sixth amended petition. Plaintiffs sued Defendants for fraud, tortious interference, breach of contract, breach of contract under an alter ego theory, unjust enrichment, and conspiracy.

Plaintiffs allege that Defendants committed several types of fraud. First, Plaintiffs claim that Whetten and Relators indicated that they wanted to purchase the Mexican real property when they actually had no intention of doing so. Thus, Plaintiffs assert that by inducing them to undertake negotiations for the sale of the Mexican real property, Whetten and Relators caused them to forebear from taking actions to protect the Mexican real property and the personal property. Second, Plaintiffs claim that Relators used Delgado to acquire information from them and then used that information against them, and that Relators referred Delgado to Plaintiffs without disclosing that he would act adversely to Plaintiffs' interests. Third, Plaintiffs claim that Defendants fraudulently "cheated" them out of "the rent payments, other Lease obligations, and other rights that Dulces Arbor is entitled to under the contract with Dulces Blueberry and Simply Goodies."

As for their conversion claim, Plaintiffs assert that Relators, both on their own and through other entities, exercised "unlawful dominion and control" over the personal property and thus deprived them of the use, enjoyment, dominion, and control over the personal property. Plaintiffs have two tortious interference claims. First, Plaintiffs allege that Defendants caused Bridge not to consummate the letter of credit. Second, Plaintiffs assert that Relators and others prevented

4

Dulces Blueberry from performing its obligations under its lease with Dulces Arbor.

Plaintiffs contend that Relators breached a contract with Dulces Arbor in which they agreed to reimburse Dulces Arbor for $25,000 in attorney's fees that Dulces Arbor incurred in pursuing the sale of the Mexican real property.

As for their breach of contract claim under the theory of alter ego, Plaintiffs assert that Simply Goodies breached its guaranty agreement with Dulces Arbor, and the corporate veil of Elamex Mexico should be pierced to render it liable for the breach.

As to their claim for unjust enrichment, Plaintiffs allege that Defendants did not compensate Dulces Arbor for the use of the Mexican real property to produce candy, which was sold without further compensation to Dulces Arbor.

Finally, Plaintiffs claim that Defendants, along with others, conspired to commit the torts described above.

## MANDAMUS

To obtain mandamus relief from the order denying its motion to dismiss for lack of subject matter jurisdiction, Relators must meet two requirements. They must show that the trial court clearly abused its discretion and that they have no adequate remedy by appeal. *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135-36 (Tex. 2004)(orig. proceeding).

A trial court abuses its discretion if it reaches a decision so arbitrary and unreasonable as to constitute a clear and prejudicial error of law. *In re Cerberus Capital Mgmt., L.P.*, 164 S.W.3d 379, 382 (Tex. 2005)(orig. proceeding). When reviewing the trial court's decision for an abuse of discretion, we may not substitute our judgment for that of the trial court with respect to resolution of factual issues or matters committed to the trial court's discretion. *See Walker v. Packer*, 827

5

S.W.2d 833, 839 (Tex. 1992); *see also Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 242 (Tex. 1985). However, we are much less deferential when reviewing the trial court's determination of the legal principles controlling its ruling. *See Walker*, 827 S.W.2d at 840. A trial court has no discretion in determining what the law is or applying the law to the facts, even when the law is unsettled. *Prudential*, 148 S.W.3d at 135. A clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion. *Walker*, 827 S.W.2d at 840.

Absent extraordinary circumstances, mandamus will not issue unless the relator lacks an adequate remedy by appeal. *In re Van Waters & Rogers, Inc.*, 145 S.W.3d 203, 210-11 (Tex. 2004)(orig. proceeding). Whether a clear abuse of discretion can be adequately remedied by appeal depends on a careful analysis of costs and benefits of interlocutory review. *In re McAllen Med. Ctr., Inc.*, 275 S.W.3d 458, 464 (Tex. 2008)(orig. proceeding). Because it depends heavily on circumstances, such a cost-benefit analysis must be guided by principles rather than by simple rules that treat cases as categories. *See id.* In addition, we must consider whether mandamus will spare the litigants and the public "the time and money utterly wasted enduring eventual reversal of improperly conducted proceedings." *In re Team Rocket, L.P.*, 256 S.W.3d 257, 262 (Tex. 2008)(orig. proceeding), *quoting Prudential*, 148 S.W.3d at 136.

## MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

Relators argue that the trial court abused its discretion in denying their motion to dismiss for lack of subject matter jurisdiction because Dulces Arbor's right to recover money damages against them for the failed sale of, and unlawful use and occupancy of, the Mexican real property at issue depends on Dulces Arbor's disputed interest in that land. Relators further contend that

6

their remedy by appeal is inadequate because proceeding to trial on causes of action over which the trial court does not have jurisdiction would deprive them of their right to dismissal and constitute an irreversible waste of judicial and public resources since the relief afforded by an appeal at the conclusion of trial would be the same as the relief afforded by mandamus: dismissal. Because we conclude that Relators have not shown that the trial court abused its discretion in denying their motion to dismiss for lack of subject matter jurisdiction, we do not reach the issue of whether Relators have an adequate remedy by appeal.

### *Standard of Review*

Whether a trial court has subject-matter jurisdiction is a question of law subject to *de novo* review. *Texas Natural Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 855 (Tex. 2002). If the trial court lacks subject matter jurisdiction, the trial court's judgment must be reversed and the case dismissed. *City of Garland v. Louton*, 691 S.W.2d 603, 605 (Tex. 1985). A motion to dismiss based on a lack of subject matter jurisdiction is the functional equivalent of a plea to the jurisdiction. *Trutec Oil & Gas, Inc. v. W. Atlas Intern, Inc.*, 194 S.W.3d 580, 584 (Tex.App.--Houston [14th Dist.] 2006, no pet.); *Anderson v. City of San Antonio*, 120 S.W.3d 5, 7 (Tex.App.--San Antonio 2003, pet. denied). A plea to the jurisdiction challenges the trial court's authority to determine the subject matter of a cause of action. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). In deciding a plea to the jurisdiction, the trial court must determine if the plaintiff has alleged facts that affirmatively demonstrate its jurisdiction to hear the case. *Miranda*, 133 S.W.3d at 226. The trial court construes the pleadings liberally in favor of the plaintiff and looks to the pleader's intent. *Id*. If the pleadings do not affirmatively demonstrate jurisdiction, but do not negate it outright, then the plaintiff ought to be afforded the

7

opportunity to amend since the issue is one of pleading sufficiency. *Id*. at 227. If, however, the pleadings affirmatively negate jurisdiction, the trial court may grant the plea to the jurisdiction or the motion to dismiss without allowing the plaintiff an opportunity to amend. *Id*. The trial court may also consider evidence in determining a plea to the jurisdiction or a motion to dismiss, and must do so when necessary to resolve the question of subject-matter jurisdiction. *Id*.

### *Applicable Law*

It is well-settled that Texas courts have no subject matter jurisdiction to adjudicate title to interests in real property outside of Texas. *Holt v. Guerguin*, 106 Tex. 185, 189, 163 S.W. 10, 12 (1914); *Trutec Oil & Gas*, 194 S.W.3d at 583; *Kelly Oil Co. v. Svetlik*, 975 S.W.2d 762, 764 (Tex.App.--Corpus Christi 1998, pet. denied); *Hartman v. Sirgo Operating, Inc.*, 863 S.W.2d 764, 766 (Tex.App.--El Paso 1993, pet. denied). However, it is also well-settled that Texas courts have subject matter jurisdiction over lawsuits relating to real property outside of Texas if the nature of the suit and the remedy sought directly affect and operate upon the defendant, and not upon the out-of-state property. *Tex. & Pacific Railway Co. v. Gay*, 86 Tex. 571, 589, 26 S.W. 599, 605 (1894); *Banco Minero v. Ross*, 106 Tex. 522, 533-35, 172 S.W. 711, 713 (1915). The determining issue is whether the nature of the lawsuit in question involves a naked question of title; if it does, the suit is *in rem*, if it does not, the suit is *in personam*. *Hartman*, 863 S.W.2d at 766; *Estabrook v. Wise*, 506 S.W.2d 248, 249, 253 (Tex.Civ.App.--Tyler 1974, writ ref'd n.r.e.), *vacated as moot*, 519 S.W.2d 632 (Tex. 1974). A lawsuit involves the adjudication of title to real property if title is not involved in a merely incidental or collateral way, but is actually involved as the basis, as well as the measure of right of any recovery. *Merit Mgmt. Partners I, L.P. v. Noelke*, 266 S.W.3d 637, 646-47 (Tex.App.--Austin 2008, no pet.), *citing Kegans v. White*, 131 S.W.2d

8

990, 995 (Tex.Civ.App.--Eastland 1939, writ ref'd).

## *Discussion*

Relators believe this case requires the trial court to decide a question of title before it can render judgment, and make two arguments in support of that contention: the first factual, the second legal.

As support for their argument that a question of title has been raised, Relators direct our attention to two pieces of evidence in the mandamus record. The first is a copy of a petition filed in Mexico by the wife of one of the Third-Party Plaintiffs and Cross-Claimants in the underlying lawsuit. Citing this petition, Relators contend that Dulces Arbor's own documents establish that it transferred title to the Mexican real property to a Trustee for the benefit of Bank of the West. However, Dulces Arbor did not file the Mexican lawsuit. Rather, they are one of the named defendants. While it is accurate that the Plaintiff in the Mexican lawsuit asserted that Dulces Arbor conveyed the Mexican real property in trust, allegations contained in pleadings are not evidence, even if sworn or verified, and therefore cannot support the conclusion that Dulces Arbor transferred ownership of the Mexican real property to the trust. *See Laidlaw Waste Sys. (Dallas), Inc. v. City of Wilmer*, 904 S.W.2d 656, 660 (Tex. 1995); *Americana Motel, Inc. v. Johnson*, 610 S.W.2d 143, 143 (Tex. 1980).

In addition, the allegation in the petition cannot be characterized as a judicial admission made by Dulces Arbor because Dulces Arbor is not the pleader, and there is no evidence in the mandamus record that Dulces Arbor adopted the pleading as its own. *See Grimes v. Jalco, Inc.*, 630 S.W.2d 282, 284 (Tex.App.--Houston [1st Dist.] 1981, writ ref'd n.r.e.)(holding that judicial admissions in pleadings are binding only on the pleader); *see also Wise v. Haynes*, 103 S.W.2d

9

477, 482-83 (Tex.Civ.App.--Texarkana 1937, no writ) and *Irwin v. Par-Oil Well Servicing Co.,* 349 S.W.2d 277, 278 (Tex.Civ.App.--Texarkana 1961, writ ref'd n.r.e.)(together standing for the proposition that pleadings in other actions which contain statements inconsistent with a party's present position are inadmissible unless otherwise adopted by the party).

Moreover, the Plaintiff in the Mexican lawsuit alleged that the Mexican real property was placed into trust for the purpose of guaranteeing punctual, timely payments on the loan Dulces Arbor had secured from Bank of the West. This assertion alone does not address, much less negate, Dulces Arbor's legal right to sell or lease the Mexican real property. Given that the trust document is not in the record, neither the trial court nor this Court is able to ascertain the validity of the allegations in the Mexican lawsuit as related to the trust.

The second piece of evidence upon which Relators rely is an affidavit executed by Relators' expert on Mexican law, David Lopez ("Lopez"). Lopez is an American attorney practicing law in San Antonio who has written several treatises and scholarly articles on Mexican law. Relators contend that Lopez's affidavit establishes that only the trustee has the power to pursue lawsuits and collections with the written consent of Bank of the West, and that only the courts in Juarez have exclusive jurisdiction over suits construing the Mexican real property. Because these assertions, if true, have no bearing on determining the issue of ownership of title to the Mexican real property, Lopez's affidavit is irrelevant to determining title to the Mexican real property. *See E.I. du Pont de Nemours & Co., Inc. v. Robinson*, 923 S.W.2d 549, 556 (Tex. 1995)(holding that evidence is irrelevant if it has no relationship to any of the issues in the case).

It is also unclear whether Relators rely upon Lopez's affidavit as evidence that title to the Mexican real property has been transferred to the trust. In one section of their brief, Relators do

10

not cite the affidavit as support for this contention, but elsewhere in the affidavit, they do. (Keeping in mind that our review is *de novo*, we will consider Lopez's affidavit for the proposition that ownership of the Mexican real property was transferred to a trust.

Lopez states that he was asked to opine on "the exclusive jurisdiction of Mexican courts over real property matters and the claims and remedies, if any, available to Plaintiffs under Mexican law for the conduct by Defendants alleged in Plaintiffs' petition." Lopez does not state he was asked to provide his opinion on the ownership of the Mexican real property. Rather, he makes an assumption regarding ownership of the property. Specifically, Lopez states that he reviewed case-specific materials, including an undated "Contract for Real Property Transfer and Related Transactions" and a Spanish document dated March 10, 2000, which appears to be the modification of the aforementioned contract. However, this is unclear because there is no English translation of the document's title. Based on his review of these documents Lopez "assume[s]" that under an irrevocable Mexican collateral trust, which is not specifically identified as one of the materials he reviewed, Dulces Arbor transferred its ownership interest in the Mexican real property to the trustee and that ownership would not revert back to Dulces Arbor until it fulfilled its loan obligation to Bank of the West.

We conclude that Lopez's affidavit is insufficient to establish that title to the Mexican real property was held in a trust as Relators contend or that ownership of the property was transferred to anyone, such that title to the property may be legitimately questioned. First, as mentioned above, Lopez did not conclude that the trust, rather than Dulces Arbor, owns the Mexican real property. Instead, Mr. Lopez *assumes* that fact. Mere speculation in an affidavit is insufficient to establish a conclusion. *See Ingram v. Deere*, 288 S.W.3d 886, 903 (Tex. 2009)(holding that the

11

testimony of a defense expert, who admitted that his statements were unsupported and mere assumptions, constituted speculation insufficient to establish that the plaintiff contributed valuable property to the clinic). Second, Lopez apparently bases his assumption that Dulces Arbor does not own the property on a document he labels as an irrevocable Mexican collateral trust, but, this was not one of the documents identified by Lopez that he reviewed. However, since Lopez never states that he actually reviewed the irrevocable Mexican collateral trust document and relied on it as a basis for his assumption, there is no way to corroborate his assertions, particularly since the document is not included in the record. As a result, the underlying basis of Lopez's conclusion is unreliable. If the basis underlying an expert's opinion testimony is unreliable, the expert's testimony is unreliable and legally constitutes no evidence and may not be considered. *See Merrell Dow Pharm., Inc. v. Havner*, 953 S.W.2d 706, 714 (Tex. 1997).

No competent evidence supports the allegation that Dulces Arbor transferred *ownership* of the Mexican real property to a trust. Even were these documents referred to above competent evidence, they serve only to raise a fact issue. We may not consider disputed issues of fact in an original mandamus proceeding, *see West v. Solito*, 563 S.W.2d 240, 245 (Tex. 1978)(holding that an appellate court may not deal with disputed areas of fact in an original mandamus proceeding). We are also mindful that when reviewing a trial court's determination for an abuse of discretion, we may not substitute our judgment for that of the trial court with respect to resolution of factual issues or matters committed to the trial court's sound discretion. *See Walker*, 827 S.W.2d at 839.

Faced with a mandamus record devoid of the necessary proof to establish that Dulces Arbor does not own the Mexican real property, we cannot conclude that the trial court clearly abused its discretion in denying the motion to dismiss for lack of subject matter jurisdiction.

Relators also contend that, as a matter of law, the trial court cannot address Dulces Arbor's claims without first adjudicating issues related to the Mexican real property. Again, we are mindful that when reviewing the trial court's determination of the legal principles controlling its ruling, a trial court has no discretion in determining what the law is or in applying the law to the facts, even when the law is unsettled, and a clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion. *Prudential*, 148 S.W.3d at 135; *Walker*, 827 S.W.2d at 840. On the other hand, Relators cite no authority for their proposition that the trial court, as a matter of law, had a duty to adjudicate title as a prerequisite to address Dulces Arbor's claims. Given the lack of competent evidence offered in support of Relators' arguments, we cannot conclude that the trial court clearly abused its discretion in denying the motion to dismiss for lack of subject matter jurisdiction.

Having disposed of Relators' arguments, we hold that the trial court did not abuse its discretion in denying their motion to dismiss based on lack of subject matter jurisdiction.

## CONCLUSION

Relators' petition for a writ of mandamus is denied.


May 2, 2012

CHRISTOPHER ANTCLIFF, Justice

Before McClure, C.J., Antcliff, J., and Chew, C.J. (Senior)
Chew, C.J. (Senior)(Sitting by Assignment)

13