COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | § | |
|---|---|---|
| IN RE: | | No. 08-20-00247-CV |
| | § | |
| B.B.,[1] | § | |
| | § | AN ORIGINAL PROCEEDING |
| RELATOR. | | |
| | § | IN MANDAMUS |

## **O P I N I O N**

Relator B.B. seeks a writ of mandamus compelling the Honorable Yahara Gutierrez, judge of the 65th District Court of El Paso County, to reverse an order in Cause No. 2020DCM5860 granting the Texas Department of Family and Protective Services temporary managing conservatorship over B.B.'s son and instead issue an order stating that B.B. is his son's managing conservator based on the fit parent presumption. *See generally In re C.J.C.*, 603 S.W.3d 804, 811-12 (Tex. 2020).

We will deny mandamus relief at this time.

## **BACKGROUND**

B.B. (Father) has a child with Mother.[2] Father and Mother were together for about ten

---

[1] Pursuant to TEX.R.APP.P. 9.8(b)(2), we identify the relator using a pseudonym.

[2] Mother has two other children with a different father.

months after the Child was born. A California court awarded custody of Child to Mother when Child was about one year-old. Mother later moved to the El Paso area while Father remained in California. Child is seven years' old as of January 2021. Father has visited Child only a handful of times in the past six years.

On November 10, 2020, Child allegedly tested positive for methamphetamines, leading the Department to remove Child and his half-siblings from the home. At the time of the removal, only Maternal Grandparents were present in the home. Caseworker Merissa Amarena-Solis contacted Father in California to inform him about the removal. The day after removal, Father contacted the caseworker to ask how Child was doing, and he hired a lawyer to seek custody of Child.

According to the caseworker, California officials would not permit placement of Child with Father before a home study could take place in California. The caseworker testified the Department in Texas also had concerns with a California placement with Father, given uncertainty about the nature of the California custody order, and given that the Department was unsure of where Father was living and was aware of Father's alleged substance abuse and criminal history[3] arising out of Father's previous involvement with the Department in other case. Amarena-Solis testified that she has met with Child four times since the case began and that he has not mentioned Father. Mother testified Child does not call Father "Daddy," although Father testified Child does refer to him as "Daddy."

At the full adversary hearing held pursuant to Section 262 of the Texas Family Code, Mother testified that Father had given her a black eye when she was three months pregnant with Child and offered photographic proof, but Father denied the allegation. Mother also obtained a

---

.
[3] Father had three admitted DWIs and had not obtained treatment or complied with California court orders. He also had a history of domestic violence against Mother and possible fraud charges pending in San Diego.

two-year protective order against Father on July 18, 2018. Mother also testified to a prior pattern of verbal and physical aggression toward her. Mother testified that Father has an alcohol problem and that during one two-week visit Father was drunk "every day" except for one day in which he was too hung over to get off the couch, and that Father's actions disturbed Child. Mother testified that Father also has an unstable housing situation and has "couch surfed" since early on in their relationship.

Father testified and denied many of the allegations made by Mother and the Department, including the allegations of domestic violence. At the conclusion of the hearing, the trial court named the Department as Child's temporary managing conservator. This mandamus action followed.

## DISCUSSION

### *Mandamus Standard*

A writ of mandamus will issue if a trial court abuses its discretion and no adequate remedy by appeal exists. *In re C.J.C.*, 603 S.W.3d at 811. In determining whether to grant mandamus relief, an appellate court should defer to the trial court's factual determinations supported by the record. *Id*. Mandamus relief may be appropriate where a trial court order permits a nonparents' access to a child over a fit parent's objection. *Id*. A court of appeals cannot resolve fact issues on mandamus; thus, if a legal question turns on disputed questions of fact, mandamus should be denied. *See In re Elamex, S.A. de C.V.*, 367 S.W.3d 891, 896 (Tex.App.—El Paso 2012, orig. proceeding).

### *Analysis*

Following a full adversary hearing in a suit by a governmental entity to protect the health and safety of a child, where a child has been removed from a custodial parent due to a substantial risk of a continuing danger if the child is returned home, the placement of the child is governed by Section 262.201(n) of the Texas Family Code. TEX.FAM.CODE ANN. § 262.201(n). That provision expressly states that the trial court "shall place a child removed from the child's custodial parent with the child's noncustodial parent or with a relative of the child if placement with the noncustodial parent is inappropriate, unless placement with the noncustodial parent or a relative is not in the best interest of the child." *Id*. § 262.201(n). The Texas Family Code further provides that "[t]he best interest of the child shall always be the primary consideration of the court in determining the issues of conservatorship and possession of and access to the child." TEX.FAM.CODE ANN. § 153.002.

Conversely, in a custody modification proceeding where a nonparent seeks custody of a child already subject to an existing custody order, a parent previously named as managing conservator is entitled to a fitness presumption that the parent acts in his or her child's best interest, and a child may not be placed with another relative if the fit parent objects to the placement. *In re C.J.C,* 603 S.W.3d at 819. This presumption holds true regardless of whether the objection is made at an initial custody hearing or a subsequent modification hearing. *Id.* However, the fit-parent presumption is not absolute, and may be rebutted. While the United States Constitution protects a parent, who is not a "model" parent but who can adequately care for their child from state interference in child-rearing decisions, an unfit parent (i.e. a parent who cannot adequately care for his children) is not entitled to such deference. *Id*. at 817.

Here, Father contends that placement of Child with the Department is not in Child's best interest because Father is fit; thus, he is entitled to a presumption that Child's placement with

4

Father is in child's best interest and custody of Child cannot be granted to a nonparent (in this case the Department) because of Father's preemptory objection. In making this argument, Father relies heavily on *In re C.J.C.*, a recent Texas Supreme Court case that addresses when the fit parent presumption applies in custody modification proceedings.

*In re C.J.C.* was a private custody dispute between Father, Maternal Grandparents, and Mother's fiance following Mother's death. *See* 603 S.W.3d at 808-09. The trial court, over Father's objection, entered a temporary order granting Mother's fiance possessory conservatorship. *Id*. at 810. Although the trial court made a finding that this arrangement was in the child's best interest, there was no allegation or finding of parental unfitness against Father; on the contrary, Father's fitness was uncontested. *Id*. However, Mother's fiance and Father disagreed as to whether Father could rely on the fit parent presumption to block Mother's fiance from obtaining custody rights through Father's preemptory objection to the custody arrangement. Mother's fiance correctly noted that unlike the Texas Family Code provision dealing with initial custody determinations, the statute dealing with custody modification proceedings did not explicitly provide for the application of the fit-parent presumption. *Id*. at 813, 816-17. The narrow question on mandamus review was whether Father was nevertheless entitled to the fit parent presumption *despite* the fact the statute did not appear to call for the presumption to be applied.

The Texas Supreme Court agreed the general custody modification statute did not explicitly provide for application of the fit-parent presumption and the parental preemptory objection to nonparental custody rights in custody modification proceedings. However, because the facts of *In re C.J.C.* almost exactly matched those presented in the United States Supreme Court case *Troxel v. Granville*,[4] and because the U.S. Supreme Court in *Troxel* struck down as

---

[4] 530 U.S. 57, 60-63 (2000)(plurality op.).

unconstitutional a similar Washington statute that allowed for grandparent custody rights to be granted over parental objection even when the parent was fit, the Texas Supreme Court held that even in the absence of an explicit statutory directive, the trial court in a custody modification proceeding must still make a predicate finding of parental unfitness before granting a nonparent custody rights over the objection of the presumptively fit managing conservator parent. *Id*. at 813-14, 818-19. Without such a finding, the statute would unconstitutionally restrict parental rights and subject parental decision-making to improper state interference in violation of *Troxel*. *Id*. at 818-19.

However, *In re C.J.C.* does not help Father under these facts for two reasons.

First, *In re C.J.C.* extended the fit parent presumption to apply to a parent who had been named as the child's managing conservator in a previous order in custody modification proceedings involving private parties. By contrast, in this child protection suit brought by the State, Father was *not* previously named as Child's managing conservator. He held only the equivalent of possessory conservatorship under the California court's previous custody order. *In re C.J.C.* held the fit parent presumption extended to all stages of custody proceedings under *Troxel*, but that presumption applies only to a parent previously recognized as a managing conservator. The Texas Supreme Court explicitly stated that *In re C.J.C.* did not alter the burden of proof for modifications of court-ordered custody arrangements involving a parent who was *not* named as a managing conservator. *See id*. at 819. As such, Father cannot avail himself of the fit parent presumption in these proceedings because he was not previously recognized as the Child's managing conservator. *Id*.

Second, mandamus issued in *In re C.J.C.* because the parent's fitness in that case was never in dispute, meaning that as a fit parent, his wishes with respect to custody controlled. However, in

this case, Father was not Child's managing conservator, meaning that he was not entitled to the fit parent presumption and that the issue of his fitness was an open fact question the trial court could resolve based on the evidence before it. Indeed, the trial court made findings at Section 4.1 of the order that retained possession of Child by Mother *or* Father posed a danger to the physical health or safety of the children caused by an act or failure to act. Thus, the question before us is whether this finding of danger to the physical health or safety of the child and substantial risk of a continuing danger if the child is returned home, coupled with the additional finding that it is not in the best interest of the child for him to be placed with a noncustodial parent are supported by legally sufficient evidence. We hold that the danger to the physical health or safety of the child finding, the urgent need for protection finding, and the continuing danger findings, along with the best interest of the child finding are all supported by legally sufficient evidence.

Father does not point to any evidence in the mandamus record that would rebut these findings as a matter of law. He simply relies on the fit parent presumption as being dispositive when here, as we explained previously, it is not applicable. Father does attack Mother's credibility as a witness, but credibility and demeanor are questions reserved for the trial court on mandamus review. *See In re Elamex, S.A. de C.V.*, 367 S.W.3d at 896 (appellate court reviewing issue for abuse of discretion in mandamus posture cannot substitute its judgment for that of the trial court with respect to the resolution of fact issues or matters committed to the trial court's discretion).

Father does complain that some of the evidence the trial court relied on was mere unverified "concerns" from a Department employee that constituted hearsay and was of no legal weight, and his complaints about potential issues regarding speculation and adequacy of prove-up generally are well-taken. Still, even excluding evidence that could arguably be considered hearsay from the Department employee, the remainder of the record shows:

7

- Father had only limited visits with the Child over the last six years.

- Father has been "couch surfing" to avoid homelessness, has not had consistent addresses, and was currently residing with roommates, but would not provide information about roommates.

- Although Father denied committing domestic violence, Mother testified that Father committed domestic violence against her, and provided photograph evidence to substantiate it.

- Father has a criminal history consisting of three DWIs (he has not complied and apparently does not intend to comply with alcohol recovery courses and Mother testified during a two-week visit Father was drunk "every day" except for one day when he was too hung over to leave the couch) and a possible pending fraud charge in San Diego, along with a suspended driver's license.

- The evidence was conflicting as to whether Child recognized Father as "Daddy" or by Father's first name.

- Child has a learning disability and a speech disorder, and Mother testified that Father told her he wants custody so he can get disability benefits through Child.

- Father's mandamus petition and reply do not identify countervailing evidence in the record that would refute these assertions or bolster his claims of fitness.

These facts are sufficient to support the trial court's implied findings that it would be inappropriate to place the Child with his noncustodial parent and not in the Child's best interest. *See* TEX.FAM.CODE ANN. § 262.201(n). The same facts supporting those findings, coupled with that fact that placement would keep Child and his two half-siblings together, whereas placing Child separately with Father would lead to a separation from those siblings, are legally sufficient to support the trial court's best interest finding.

**CONCLUSION**

The trial court did not abuse its discretion by rendering the challenged order. The application for a writ of mandamus is denied.

8

February 11, 2021

YVONNE T. RODRIGUEZ, Chief Justice

Before Rodriguez, C.J., Palafox, J., and McClure, C.J. (Senior Judge)
McClure, C.J. (Senior Judge)(Sitting by Assignment)