# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

### NO. 03-22-00058-CV

---

**Ali Mahrou and Gypsie Mahrou, Appellants**

**v.**

**Alan White, Steve Drake, and Byrd Ranch Property Owners Association, Appellees**

---

**FROM THE COUNTY COURT OF BLANCO COUNTY**
**NO. CV00669, HONORABLE BRETT BRAY, JUDGE PRESIDING**

---

## M E M O R A N D U M   O P I N I O N

This is a dispute concerning Ali Mahrou and Gypsie Mahrou's obligations regarding the cost of maintenance of a road the Mahrous use to access their property. The Mahrous initiated proceedings in justice court complaining of an assessment imposed by the Byrd Ranch Property Owners Association (the Association) pursuant to a Grant and Declaration of Easement that the Association maintained burdened the Mahrous' property. The Mahrous' principal complaint was that the assessment was calculated using a cost-sharing formula contained in an invalid amendment to the easement. The Association filed a counter-claim in justice court asserting that the amendment to the easement was valid and seeking a judgment against the Mahrous for the maintenance costs it assessed using the cost-sharing formula in the amended easement. The justice court determined that it lacked jurisdiction to adjudicate the validity of the amendment to the easement and dismissed the Mahrous' claim with prejudice.

Despite declining to adjudicate the validity of the amended easement and its cost-sharing formula, the justice court ordered the Mahrous to pay the amount assessed by the Association for road maintenance. The Mahrous then sought review of the justice court's judgment in the Blanco County Court at Law. On the Association's motion, the county court found that the Mahrous failed to timely perfect their appeal from the justice court's judgment, ordered that the justice court order was "final," and dismissed the case. The Mahrous appealed the county court's judgment, asserting that the justice court's judgment was void because it lacked jurisdiction over the dispute about the validity of the easement and that the county court erred by refusing to vacate that void judgment and by denying its plea to the jurisdiction. We will vacate the county court's judgment and dismiss for want of jurisdiction.

## BACKGROUND

In 1973, Reba Byrd and her late husband L. Tonnet acquired a 1,502-acre cattle ranch near Johnson City (the "Ranch"). In 2000, Byrd began to develop the northern portion of the Ranch into the "Byrd Ranch Estates," filing the Byrd Ranch Estates Declarations of Covenants, Conditions, and Restrictions (the "Declaration") in the Blanco County property records and ultimately completing a survey of a 22-tract subdivision. The northernmost portion of the Ranch—referred to as "Section 1" in surveys of the land, advertisements, and the deeds for the individual tracts located within the section—consists of approximately 440 acres and contains tracts 1 through 5 of the Byrd Ranch Estates. The central portion of the Ranch, referred to as "Section 2," consists of approximately 498 acres and contains tracts 6 through 22 of the Byrd Ranch Estates. Byrd retained ownership of the remaining portion of the Ranch, which is referred to as the "southern portion," and includes the entrance to the Ranch from old U.S.

2

Highway 290. Residents of the Byrd Ranch Estates must travel from the Ranch entrance off old U.S. Highway 290 through the southern portion of the Ranch to reach the tracts in Section 1 and 2. To provide a right of ingress and egress to and from the Ranch entrance, the Byrds, defined as "Grantors," granted the owners of the tracts in Section 1 of Byrd Ranch Estates two easements set forth in a "Grant & Declaration of Easement" (the "Easement Grant"). The easement, referred to as "the Byrd Easement," is over a road running from the entrance of the Ranch through the southern portion of the ranch, through Section 2, and terminating at the boundary between Section 2 and Section 1. The easement referred to as "the Property Easement" is over a road running from the boundary between Section 2 and Section 1 and terminating in Section 1.[1] The Easement Grant included a formula for sharing the cost of repair and maintenance of the road. All costs of repair and maintenance of the Property Easement was to be shared by the Owners of Tracts 1 through 5 in Section 1 in proportion to the percentage of the acreage the individual owner's tract bore to the total acreage of Tracts 1 through 5. Additionally, the Owners of Tracts 1 through 5 in Section 1 would share, in the same proportion as for the Property Easement, five-sixths of the cost of repair and maintenance of the Byrd Easement. The Byrds, as the Grantors of the easement, were responsible for one-sixth of the cost of repair and maintenance of the Byrd Easement.

The Easement Grant provided that its terms "shall run with the land" and that all references to Grantors and Owners "shall mean and include the respective successors and assigns of such parties who become Owners or have a beneficial interest in the Property or the Tracts."

---

[1] When the easements were granted, the Byrds still owned the property that subsequently became Section 2 of Byrd Ranch Estates. The Easement Grant makes no reference to Section 2 and the definition of the "Owners" to whom the easement was granted is limited to the owners of Tracts 1 through 5 in Section 1, which is defined as "the Property."

In 2005, the Mahrous purchased Tract 18 in Section 2 from Byrd. In 2007, they purchased Tract 17 in Section 2 from Byrd. The general warranty deeds from Byrd to the Mahrous conveyed Tract 17 and 18 together with "the Grant and Declaration of Easement." As Byrd's successors in interest to Tracts 17 and 18, the Mahrous succeeded to Byrd's obligation, as set forth in the cost-sharing provision of the Easement Grant, to share in payment of one-sixth of the cost of repair and maintenance of the Byrd Easement.

In January 2015, Byrd and the Association sought to amend the Easement Grant. The reason for the amendment, as stated in an Amended Grant & Declaration of Easement ("the Amended Easement Grant"), was that:

> [I]t has come to the attention of Grantor and owners of [Tracts 1 through 22 of the Byrd Ranch Estates] that (1) the Original Easement was created before Phase Two was developed and therefore does not include Phase II [sic]; (2) that the Cost-Sharing Formula of the Property Easement and the Byrd Easement as described in the Original Easement is inconsistent with the road maintenance formula contained in the Original Restrictions and which is currently being utilized by the [owners of Tracts 1 through 22 of the Byrd Ranch Estates]; and (3) that the legal description of the Property Easement and the Byrd Easement as described in the Original Easement is incomplete.

The Amended Easement Grant provided a cost-sharing formula whereby owners of tracts 6 through 22 in Section 2, as well as those of Tracts 1 through 5 in Section 1, shared in both the total cost of repair and maintenance of the easement over Sections 1 and 2, now referred to as the BRE Roadway, and five-sixths of the cost of repair and maintenance of the easement over the southern portion of the Ranch, now referred to as the Byrd Roadway. The Mahrous assert that the change to the cost-sharing formula in the Amended Easement Grant resulted in a six-fold increase in the Mahrous' share of the road repair and maintenance costs.

The Mahrous, who did not participate in the Association meeting at which the vote to amend the Easement Grant was taken, filed a "Notice to Void the Amended Grant & Declarations of Easement" in the Blanco County property records. After the Association demanded that the Mahrous pay road repair and maintenance charges calculated under the Amended Easement Grant's cost-sharing formula, the Mahrous sued the Association and two of its officers in Blanco County Justice Court.[2] The Mahrous asserted that the Association dues assessed for Tracts 17 and 18 were "incorrectly assessed" and were excessive. The Mahrous sought discovery regarding the Association's claim in its demand letter that "[t]he Amended Easement Grant was duly approved, signed, notarized and filed in September 2015" and "was legally binding upon all [Association] members, including [the Mahrous]." The Association filed an answer stating that it had "properly assessed and collected" the Mahrous' dues. After filing a motion for summary judgment in which it argued that the dues assessment was correct because the assessment conformed to the cost-sharing formula in the Amended Easement Grant, the Association filed a counterclaim seeking to recover the dues it had assessed the Mahrous for road repair and maintenance. The Mahrous filed a response to the Association's summary judgment motion in which they argued that the Amended Easement Grant was "illegally drafted" and "not a legitimate amendment," in part because it was not approved by the required percentage of Association member votes.

The justice court granted the Association's motion for summary judgment and ordered the Mahrous to pay the dues assessed. The justice court deleted from the judgment proposed language addressing whether the Mahrous' property was burdened by the Amended

---

[2] The Mahrous filed an amended petition to add a third Association member as a defendant based on his being "a signatory to the questionable [Amended Easement Grant] which is currently is dispute."

Easement Grant, and the judgment recited that "[a]ll claims and causes of action brought by [the Mahrous] against [the Association] are dismissed with prejudice."[3] The Mahrous then filed a motion to vacate the justice court's judgment, arguing that because the justice court had "informed [the Association] that Small Claims Court does not have jurisdiction" to determine whether the Mahrous' property was bound by the Amended Easement Grant, the court did not have jurisdiction to adjudicate whether the Association's road repair and maintenance assessment was proper. The Mahrous asserted that the only court with authority to adjudicate and dispose of the parties' claims was the Blanco County District Court, and that because the justice court lacked subject-matter jurisdiction over the case it should vacate its judgment and dismiss the case without prejudice. The justice court denied the motion.

The Mahrous then filed a "Plaintiff's Appeal by Cash Deposit" to appeal the justice court's judgment to the Blanco County Court and deposited $500.00 with the justice court. The Blanco County Court Clerk signed a "Letter Acknowledging Receipt of Appeal from Justice of Peace Court" and informed the Mahrous that the appeal would be deemed perfected if they paid the $222.00 filing fee within twenty days of the date of the acknowledgement letter. The Mahrous timely paid the filing fee.

In the county court, the Mahrous contended that the justice court lacked jurisdiction over the claims they brought against the Association and that its judgment was therefore void. The Mahrous requested that the county court vacate the justice court's judgment. The Mahrous also asserted that the only court with jurisdiction to adjudicate the issues presented,

---

[3] The justice court also denied the Association's request for an award of attorneys' fees based on its being the prevailing party in "an action based on breach of a restrictive covenant pertaining to real property." *See* Tex. Prop. Code §5.006 (providing that in action based on breach of restrictive covenant pertaining to real property, court "shall allow to a prevailing party who asserted the action reasonable attorney's fees").

6

which turned on the validity of the Amended Easement Grant, was the Blanco County District Court and requested that the county court transfer the case to the district court. The county court dismissed the Mahrous' appeal on the ground that the Mahrous failed to perfect the appeal by posting a cash deposit or bond for twice the amount the justice court ordered them to pay the Association. The county court signed an order dismissing the Mahrous' appeal and stated in the order that "the judgement [sic] of the J.P. court below is final." The Mahrous then perfected this appeal. On appeal, the Mahrous contend that their appeal to the county court was perfected when they filed their appeal by cash deposit, deposited $500 with the justice court, and paid the $222.00 county court filing fee. The Mahrous also assert that the county court erred by declaring the justice court's judgment to be "final" when it should have vacated the justice court's void judgment and dismissed their appeal without prejudice for lack of subject-matter jurisdiction.

**DISCUSSION**

We first consider whether the Mahrous perfected their appeal of the justice court's judgment to the county court, which presents a question of law that we review de novo. *See Pichini v. Federal Nat'l Mortg. Ass'n*, 569 S.W.3d 192, 193 (Tex. App.—Houston [1st Dist.] 2018, no pet.). Appeals from justice court to county court are governed by Texas Rule of Civil Procedure 506.1. *See* Tex. R. Civ. P. 506.1. This rule imposes two requirements on a plaintiff seeking to appeal an adverse justice court judgment to county court. First, the rule requires that a plaintiff seeking to appeal the judgment post an appeal bond within 21 days after judgment is signed by the justice court. *Id.* R. 506.1(a). The rule further provides that an appeal is "perfected" upon the filing of the bond. *Id.* R. 506.1(h). Second, the rule requires that a plaintiff

7

seeking to appeal the judgment pay the costs on appeal to the county court in accordance with Rule 143a. *Id.*; Tex. R. Civ. P. 143a. Rule 143a provides that:

> If the appellant fails to pay the costs on appeal from a judgment of a justice of the peace or small claims court within twenty (20) days after being notified to do so by the county clerk, the appeal shall be deemed not perfected and the county clerk shall return all papers in said cause to the justice of the peace having original jurisdiction and the justice of the peace shall proceed as though no appeal had been attempted.

*Id.* R. 143a. Compliance with both requirements is jurisdictional, and a county court lacks jurisdiction to hear an appeal if the requirements are not met. *See Pichini*, 569 S.W.3d at 193.

Here, it is undisputed that the Mahrous timely posted an appeal bond of $500.00 with the justice court and timely paid the county court appeal costs of $222.00 as directed by the county court clerk. Nevertheless, the Association argued, and the county court agreed, that the Mahrous were required to post a bond "in an amount equal to twice the amount" the justice court ordered the Mahrous to pay the Association as dues for road repair and maintenance. The Association reasons that the Mahrous are *defendants* seeking to appeal the justice court judgment and, consequently, are required by Rule 506.1 to pay an amount equal to twice the amount of the judgment. *See* Tex. R. Civ. P. 506.1(b) ("A plaintiff must file a $500 bond. A defendant must file a bond in an amount equal to twice the amount of the judgment."). The record belies the Association's assertion. The Mahrous initiated the proceedings in justice court as plaintiffs seeking a judgment that the Association had improperly calculated the road repair and maintenance assessment because the assessment was based on a cost-sharing formula contained in an invalid amendment to the Easement Grant. The justice court dismissed their claim with prejudice. The Mahrous appealed the justice court's order and requested that the county court vacate it and dismiss their claim without prejudice so that they could pursue it in the only court

8

with subject-matter jurisdiction to determine the validity of the Amended Easement Grant. As plaintiffs challenging the trial court's dismissal of their claim, the Mahrous were required to file a $500 bond, which they did. The trial court's having ordered the Mahrous to pay the amount the Association assessed pursuant to the challenged amendment does not convert the Mahrous from plaintiffs to defendants. The crux of the Mahrous' appeal is their argument that the justice court, having determined that it lacked subject-matter jurisdiction over their challenge to the validity of the Amended Easement Grant, should have dismissed their claims without prejudice instead of with prejudice. *See Mossler v. Shields*, 818 S.W. 2d 752, 754 (Tex. 1991) (per curiam) ("[I]t is well established that a dismissal with prejudice functions as a final determination on the merits."). That an appeal of the trial court's ruling on its claims for relief would have the collateral consequence of vacating the justice court's judgment, including its order that the Mahrous pay the assessment, *see Praise Deliverance Church v. Jelinis,* LLC, 536 S.W.3d 849, 854 (Tex. App.—Houston [1st Dist.] 2017, pet. denied) (perfection of appeal to county court effectively vacates justice court judgment), does not alter the Mahrous' status as plaintiffs appealing an adverse justice court judgment. The Mahrous complied with both requirements to perfect the appeal of the justice court judgment to the county court and, therefore, timely perfected their appeal. The county court erred by dismissing the Mahrous' appeal on the ground that it was not timely perfected.

In their brief to this Court, the Mahrous argue that the county court should have "declared the justice court's judgment to be void and vacated that judgment." This argument presumes that the county court had jurisdiction to review the justice court's alleged legal errors. The Mahrous' appeal from the justice court judgment was an appeal de novo, meaning that the entire case is presented to the county court "as if there had been no previous trial." Tex. R. Civ.

9

P. 510.10(c). Because of the de novo nature of the proceedings, a county court does not sit as a true appellate court and does not review the justice court's decision for legal error; instead, it tries the case for itself as if no ruling had ever been made in the justice court. *See Villalon v. Bank One*, 176 S.W.3d 66, 69-70 (Tex. App.—Houston [1st Dist.] 2004, pet. denied). Thus, when the Mahrous filed and perfected their appeal, the justice court's judgment was in effect vacated. *Triple Crown Moving & Storage, LLC v. Ackerman*, 632 S.W.3d 626, 636 (Tex. App.—El Paso 2020, no pet.). There was, therefore, no need for the county court to take any action to vacate the justice court's judgment.

The Mahrous also argue on appeal that the county court should have granted their plea to the jurisdiction and dismissed the case because the case involved issues of title to real property. *See Chambers v. Pruitt*, 241 S.W.3d 679, 684 (Tex. App.—Dallas 2007, no pet.) ("District courts generally have exclusive jurisdiction to determine title to real property."). The Mahrous assert that the county court should have dismissed the case without prejudice "so the title issues could be determined by the only court with the original subject-matter jurisdiction— the district court of Blanco County." Thus, the principal issue before us is whether the county court had subject-matter jurisdiction over the dispute between the Mahrous and the Association over the dues assessment or whether that dispute involved issues of title to real property which the county court did not have jurisdiction to address. Whether a trial court has subject-matter jurisdiction is a question of law we review de novo. *Texas Nat. Res. Conservation Comm'n v. IT Davy*, 74 S.W.3d 849, 855 (Tex. 2002). If we determine the trial court lacks subject-matter jurisdiction, we must reverse the trial court's judgment and dismiss the case. *See City of Garland v. Louton*, 691 S.W.2d 603, 605 Tex. 1985).

10

Blanco County Court is a constitutional county court. *See* Tex. Gov't Code § 26.116. It does not have jurisdiction in "a suit for the recovery of land." *Id.* § 26.043(8). Thus, if this lawsuit constitutes a suit for the recovery of land, the county court did not have subject-matter jurisdiction to adjudicate the claims. A suit "for the recovery of land is a suit that determines title." *See, e.g.*, *Doggett v. Nitschke*, 498 S.W.2d 339 (Tex. 1973) ("A county court does not have jurisdiction to try questions of title to land."); *Chambers v. Pruitt*, 241 S.W.3d 679, 684 (Tex. App.—Dallas 2007, no pet.) ("District courts generally have exclusive jurisdiction to determine title to real property."). Suits for the recovery of land include more than simply disputes over the identity of the fee simple owner. *See, e.g.*, *Coughran v. Nunez*, 127 S.W.2d 885, 887 (Tex. 1939) (expressing "no doubt" that easements "constitute an interest in real estate," a dispute over the existence of which "necessarily involved the trial of title to real estate"); *State v. Reece*, 374 S.W.2d 686, 688 (Tex. App.—Houston 1964, no writ) (validity of deed restrictions is question of title).

In the present case, the Mahrous argue that the Amended Easement Grant relied on by the Association to assess the road repair and maintenance dues is invalid and does not bind their tracts in Section 2. The Mahrous maintain that because the existence of rights under the Amended Easement Grant are the basis of its claims, the case involves a determination of title to real property. The Association does not dispute that resolving disputes about rights under an easement involves a determination of title to real property. However, the Association asserts that the parties' relative rights under the Amended Easement Grant are "merely incidental" to the issues in the suit, which they characterize as whether the Mahrous are required to pay the road repair and maintenance assessment. The Association relies on authority holding that if a question of title is present but arises only incidentally, the title question does not deprive the

11

county court of jurisdiction. *See Merit Management Partners 1, L.P. v. Noelke*, 266 S.W.3d 637, 646 (Tex. App.—Austin 2008, no pet.) (county court retains jurisdiction if title to real property is only incidentally involved).

We are informed by this Court's opinion in *Noelke*. In that case, we explained that "a county court does not have jurisdiction over a lawsuit if the gist of the suit is a title dispute." *Id.* at 649. We described the test for making the determination as follows: "To determine the extent to which title and possession are involved, we look to 'the nature of the suit, the injury complained of, and the relief sought.'" *Id.* (quoting *Dauenhauer v. Devine*, 51 Tex. 480, 487 (1879)). "If the right of recovery in a suit depends, at least in part, upon title to land, but there is no real dispute between the parties over questions of title, the question of title is incidental." *Id.* at 648. When the question of title is incidental, the county court is not deprived of jurisdiction. *Id.*; *see also In re Elamex, S.A. de C.V.*, 367 S.W.3d 891, 898 (Tex. App.—El Paso 2012, orig. proceeding) ("A lawsuit involves the adjudication of title to real property if title is not involved in a merely incidental or collateral way, but is actually involved as the basis, as well as the measure of right of any recovery." (citing *Noelke*, 266 S.W.3d at 646-47)).

Here, the existence and validity of the Amended Easement Grant is at the heart of the Mahrous' claim for relief. The Association argues that the Mahrous' pleading never directly challenged the validity of the Amended Easement Grant but, rather, argued merely that the dues had been "incorrectly assessed and collected" by the Association. While we disagree that the Mahrous did not put the validity of the Amended Easement Grant at issue in the case, even accepting the Association's argument, the case is still one to which title to real property is more than incidentally involved. The Association's right to collect the amount of dues it has assessed requires the court to determine which cost-sharing formula is applicable, that is, whether the

Amended Easement Grant's cost-sharing formula is the correct formula to apply. This, in turn, requires that the court determine whether the Amended Easement Grant is enforceable. There is, therefore, a real dispute between the parties over the validity of the Amended Easement Grant— a question of title. The Amended Easement Grant is the basis for, as well as the measure of, the Association's right to assess and collect from the Mahrous the road repair and maintenance costs they have sued to recover. To adjudicate whether the Mahrous owe the dues assessed by the Association, the court must determine the validity of the Amended Easement Grant. The competing claims at issue in this case present a dispute with respect to title to real property over which the county court did not have jurisdiction.

## CONCLUSION

The issue of title to property presented by the Mahrous and the Association in their claims is neither incidental nor collateral. The question of title lies at the heart of both parties' claims, and, therefore, the county court did not have jurisdiction over the lawsuit. "If the trial court lacks subject matter jurisdiction, the appellate court can make no order other than reversing the judgment of the court below and dismissing the cause." *Louton*, 691 S.W.2d at 605. The county court lacked subject-matter jurisdiction over this cause. Consequently, we vacate the judgment of the county court and dismiss this cause.

 

_____

Chari L. Kelly, Justice

Before Justices Baker, Kelly, and Theofanis

Vacated and Dismissed for Want of Jurisdiction

Filed: August 4, 2023